569 F.2d 993
 16 Fair Empl.Prac.Cas. 245, 15 Empl. Prac.
Dec. P 8016
Julia GAULT, Individually and on behalf of all others
similarly situated, Plaintiff-Appellant,
v.
James E. GARRISON, President, Board of Education, School
District 215, et al., Defendants-Appellees.
 No. 74-1579.
 United States Court of Appeals,
Seventh Circuit.
 Dec. 20, 1977.
 
 Howard Eglit, Chicago, Ill., for plaintiff-appellant.
 Stephen L. Solomon, Jonathan A. Weiss, New York City, for amicus curiae.
 Edward A. Antonietti, Darryl R. Lem, Calumet City, Ill., for defendants-appellees.
 Before BARNES, Senior Circuit Judge,[1] SWYGERT and PELL, Circuit Judges.
 SWYGERT, Circuit Judge.
 
 
 1
 Julia Gault, on behalf of herself and others similarly situated, filed suit under 42 U.S.C. § 1983 challenging the constitutionality of governmental mandatory retirement requirements. Plaintiff contends that defendant school board's policy of forced retirement is unconstitutional as violative of both equal protection (by discriminating against plaintiff on the basis of age) and due process (by creating an irrebuttable presumption and by terminating public employment arbitrarily). Shortly after the complaint was filed, the district court granted defendants' motion to dismiss and plaintiff appealed.[2]
 
 
 2
 After oral argument was heard, this court issued an order staying the appeal pending a ruling in Murgia v. Massachusetts Board of Retirement, 376 F.Supp. 753 (D.Mass.1974), prob. juris. noted, 421 U.S. 974, 95 S.Ct. 1973, 44 L.Ed.2d 466 (1975). See 523 F.2d 205 (7th Cir. 1975). Following the decision in Murgia, 427 U.S. 307 (1976), we ordered the parties to file supplemental briefs. We now treat the constitutional issues raised by plaintiff and, for the reasons stated below, reverse the order of the district court.
 
 
 3
 * Although the facts were stated in our previous opinion, a brief resume may be helpful. Upon reaching the age of 65, plaintiff, a tenured biology teacher at Thornton Fractional Township South High School, located in Cook County, Illinois, was informed by the district school board that she would have to retire at the end of the academic year.
 
 
 4
 The Illinois School Code of 1961, as amended, Chapter 122 of the Illinois Revised Statutes, does not require the retirement of teachers at any age. It does provide, however, that the tenure of public school teachers shall end at age 65 and that any subsequent employment shall be on an annual basis. Ill.Rev.Stat. ch. 122, § 24-11. Furthermore, the School Code does not afford teachers over 65 the extensive procedures which a school board must follow to dismiss or remove a teacher.[3] Id. at § 24-12.
 
 
 5
 This statutory scheme is supplemented by defendant school board's policy which states that "a teacher who reaches the age of sixty-five before the end of a school year shall retire on that date following his 65th birthday. . . ." Policy No. 4146. This policy thereby goes a step further than the School Code by removing all teachers over 65 under the board's jurisdiction from any consideration for this annual retention. Plaintiff was terminated pursuant to this policy.II
 
 
 6
 Plaintiff contends that the board policy of compulsory retirement violates her equal protection rights both substantively and procedurally: first, by requiring those over 65 years of age to retire, and second, by denying those over 65 those procedures granted to any other teacher upon termination. We note at the outset that this case does not involve a claim of a right to government employment, but rather concerns only the access to continued eligibility for such employment.
 
 
 7
 Our first task in assessing an equal protection claim is to determine the proper standard of judicial review. Memorial Hospital v. Maricopa County, 415 U.S. 250, 253, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974). The Supreme Court has employed at least two standards of review: the traditional rational basis test wherein classifications are constitutional if they bear a rational relationship to a permissible state interest, Dandridge v. Williams,397 U.S. 471, 485-86, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), and the standard of strict judicial scrutiny wherein classifications are constitutional only if they are necessary to promote a compelling state interest. Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). The latter, more rigid, test is applied when reviewing state-created classifications which interfere with the exercise of a fundamental right or involve a suspect classification. San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 16-17, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).
 
 
 8
 Which standard to apply in determining whether a compulsory retirement provision denies equal protection was answered in Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). The Court in that case held that the right of governmental employment is not fundamental and that age does not constitute a suspect class. Id. at 313-14, 96 S.Ct. 2562. Accordingly, the Supreme Court held the standard of strict scrutiny inappropriate and examined the mandatory retirement statute under the traditional rational basis test. Our inquiry in this case, therefore, is directed to ascertain whether the articulated state interest is legitimate, and whether the age 65 classification for the retirement of school teachers is rationally related to furtherance of that state interest.[4]
 
 
 9
 In Murgia a uniformed state policeman challenged a state statute which forced him to retire at age 50. The Court observed that the purpose identified by the state was a desire "to protect the public by assuring physical preparedness of its uniformed police." 427 U.S. at 314, 96 S.Ct. at 2567. The record included testimony presented to the trial court pertaining to the rigors and demands of uniformed police activities as well as medical testimony concerning the relationship of age to the ability to perform those functions. Based upon this evidence, the Court concluded that a clear rational relationship existed between the classification and its articulated purpose. Id. at 315, 96 S.Ct. 2562.
 
 
 10
 In following the Supreme Court's analysis, we look first for an identifiable state purpose in the statutory termination of tenure and the local board's mandatory retirement of schoolteachers at age 65. Because this case was dismissed shortly after the complaint was filed, no evidence has been presented and no affidavits have been filed; the court did permit plaintiff to file an "offer of proof."[5] The defendants have not identified the purpose of the requirements in question; their briefs only hint that the purpose may be to remove unfit teachers. In Murgia, the Court called upon "the purpose identified by the State" as that to which the age classification must bear a rational relationship. Without such a purpose demonstrated in the instant case, we cannot, absent further proceedings, justify the challenged provisions.
 
 
 11
 Even if we could assume that the purpose of these provisions is to prevent the retention of unfit teachers, the requirements must fall. Again, unlike the situation in Murgia, there has been no evidence presented to indicate any relationship between the attainment of the age of 65 and a schoolteacher's fitness to teach. The physical demands of teaching do not even begin to approach those found by the Supreme Court, upon credible evidence, to be critical to the performance of uniformed state police duties. No evidentiary proof is necessary to note that teaching is a profession in which mental skills are vastly more important than physical ability. We cannot assume that a teacher's mental faculties diminish at age 65. On the contrary, as suggested by plaintiff's offer of proof, much in the way of knowledge and experience, so helpful to the educational profession, is often gained through years of practice.
 
 
 12
 Another distinction must be drawn between this case and Murgia. Because of the nature of the duties required of the policemen in the latter case and the imminent possibility of unfitness shown to be related to advancing age, failure to perform properly in any given instance could become a matter of life or death. In contrast, if a teacher becomes unfit, whether because of age or other factors, it does not become a matter of such immediacy that there is no time or opportunity to take appropriate procedural steps for his or her removal. If the procedures normally taken for removal of an allegedly unfit teacher are used, there is greater assurance that unfit teachers will be removed while the rest will be able to continue performing their jobs, putting to use the experience and knowledge gained over the years.
 
 
 13
 It is no answer to say that a state "does not violate the Equal Protection Clause merely because the classifications made by its law are imperfect," Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970), when these classifications cannot be shown even to be rationally related to the objective the state is attempting to achieve (still assuming arguendo such an objective can be shown by the defendants). In Murgia, the Court found no indication that the mandatory retirement provision had "the effect of excluding from service so few officers who are in fact unqualified as to render age 50 a criterion wholly unrelated to the objective of the statute." 427 U.S. at 316, 96 S.Ct. at 2568. Unlike the Court in Murgia, we cannot say that the provisions in the instant case would eliminate any more unfit teachers (assuming again that such is the purpose) than a provision to fire all teachers whose hair turns gray.
 
 
 14
 The decision in Murgia was based upon an evidentiary record showing the state's purpose and how the challenged legislation related to that purpose. Here, there is no record. We cannot uphold as constitutionally valid a classification of public school teachers based upon age without a showing that it rationally furthers some identifiable and articulable state purpose.
 
 III
 
 15
 Plaintiff's equal protection claim has yet another aspect. She contends that the lack of any procedure in both the automatic termination of her tenure and her mandatory retirement resulted in treatment unequal to that given to any other teacher who is released. Both tenured and probationary teachers under age 65 are guaranteed procedural safeguards prior to any termination. This situation is similar to that in a recent case decided by this court. In Miller v. Carter, 547 F.2d 1314 (7th Cir. 1977), aff'd,--- U.S. ----, 98 S.Ct. 786, 54 L.Ed.2d 603 (1978), we sustained a constitutional challenge to a City of Chicago ordinance which barred persons convicted of certain crimes from obtaining a public chauffeur's license. The ordinance further provided that a person to whom a license had been issued might have his license revoked after conviction of such an offense; however, revocation was not automatic but was subject to administrative discretion. Thus the ordinance created two classes receiving unequal treatment, the distinguishing fact being whether a person was in possession of the license at the time of his conviction, although the members of both classes were similarly situated in that the type of crime was identical. We found this to be an irrational distinction and held it violative of equal protection.
 
 
 16
 Here, as in Miller, the classification of teachers, between those who are afforded and those who are not afforded procedural safeguards before their removal, on its face discriminates against persons who are similarly situated. Accordingly, we cannot sanction the total lack of procedural equality suffered by teachers who have reached the age of 65 without a record showing the presence or absence of a justifiable and rational state purpose.
 
 
 17
 Because plaintiff's complaint states a claim that her rights under the Fourteenth Amendment have been violated, the order dismissing the complaint is reversed and the cause is remanded for further proceedings consistent with this opinion.
 
 
 18
 BARNES, Senior Circuit Judge, concurring.
 
 
 19
 Strict scrutiny is not the proper test for determining whether a mandatory retirement provision denies appellee equal protection, because strict scrutiny of a legislative classification is required only when the classification impermissibly interferes with the exercise of a fundamental right (cases cited in Murgia, Note 3), or operates to the peculiar disadvantage of a suspect class (cases cited in Murgia, Note 4). If mandatory retirement for a policeman at age 50 does not interfere with the exercise of his fundamental right neither will mandatory retirement interfere with the desire or right of a teacher to teach at age 65. Nor is a teacher within a suspect class. Appellant here has no fundamental right to teach, either at 65, or at any other age. Cf. San Antonio School District v. Rodriguez, 411 U.S. 1, 16, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Here we must examine the state's classification under the less strict rational-basis standard. To paraphrase Murgia, "Since physical ability generally declines with age, mandatory retirement at 65 serves to remove from teaching those whose fitness for work presumptively has diminished with age. This clearly is rationally related to the state's objective."
 
 
 20
 Whether 65 or 60 or 70 is a proper age for teacher retirement is not here our concern. Imperfect classifications made by legislative bodies are not rendered unlawful by their imperfections. Dandridge v. Williams, 397 U.S. at 485, 90 S.Ct. 1153, cited in Murgia, 427 U.S. pp. 316-17, 96 S.Ct. 2562.
 
 
 21
 But to apply these principles to the facts of this case is impossible, because no evidence has been presented at any time (as Judge Swygert's opinion points out), and we have no factual basis upon which to judge the issues or to apply the law.
 
 
 22
 I concur in Judge SWYGERT's opinion.
 
 
 23
 PELL, Circuit Judge, dissenting.
 
 
 24
 The majority opinion draws distinctions found to be persuasively supporting the result reached in the opinion between the present case and Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976); however, a fundamental distinction between the two cases appears to be ignored. Because it is a significant distinction in my mind, and for other reasons set out herein, I respectfully dissent.
 
 
 25
 Murgia drew the line for compulsory retirement at the age of 50, "a certain age in middle life," id. at 313, 96 S.Ct. at 2567. While for personal reasons, as well documented studies, I would be hesitant to say that the person who has reached 65 years of age is necessarily elderly either physically or mentally, I also think as a matter of law that that age was so well established at the pertinent time as a point at which retirement age was reached that if it is to be changed, the change should be accomplished by the legislative branch and not by judicial action purportedly under the Constitution.
 
 
 26
 In 1967, the Congress, being aware that approximately half of the states had enacted age discrimination legislation, 1967 U.S.Code Cong. & Admin.News p. 2215, enacted P.L. 30-302, sometimes referred to as the Age Discrimination in Employment Act of 1967. In House Report No. 805 on the pending legislation it was stated that "the bill outlines a national policy against discrimination in employment on account of age, provides a vehicle for enforcement of the policy, and establishes broad general guidelines for its implementation." 1967 U.S.Code Cong. & Admin.News p. 2220. That national policy insofar as age limitations were concerned was stated to be "individuals who are at least forty years of age but less than sixty-five years of age." 29 U.S.C. § 631. In the statute itself the Congress stated that the Act's purpose was, inter alia, "to promote employment of older persons based on their ability rather than age"; and "to prohibit arbitrary age discrimination in employment . . ." 29 U.S.C. § 621(b). It appears plain that the Congress by so stating the policy did not regard discontinuance of employment beyond the age of 65 to be age discrimination of an arbitrary nature. Indeed, House Report No. 805 indicates that the major concern was not with the 65 year age standard but with the lower limit, which had been lowered from 45 in the original bill, with argument being considered that in some occupations age discrimination could be found at a lower point. Id. at 2219.
 
 
 27
 That a legislative enactment establishes national guidelines does not, of course, necessarily import constitutionality into those guidelines. Nevertheless, when those guidelines are an interwoven part of a broader pattern, as is obviously the situation in this country, of pension and retirement plans and social security statutes, the courts, it appears to me, should be extremely reluctant to tamper with one part of the broad social scheme.
 
 
 28
 The Supreme Court has told us in Murgia, dealing with compulsory retirement of state police officers at the age of 50, that such action by a legislature is presumed to be valid, and that the judicial inquiry must employ a relatively relaxed rational-basis standard reflecting judicial "awareness that the drawing of lines that create distinctions is peculiarly a legislative task." 427 U.S. at 314, 96 S.Ct. at 2567. This approach to a "middle life" compulsory retirement age directed at one specific occupation suggests that our examination of a compulsory retirement procedure involving a significantly higher age maximum not only applicable to the particular occupation but one generally applicable, and generally deemed appropriate, should be on an a fortiori basis insofar as the relativity of the relaxed rational-basis standard is concerned.
 
 
 29
 The significance of a higher age equation with the propriety of mandatory requirement was implicitly recognized in the Murgia district court opinion by the following observation of Judge Aldrich:
 
 
 30
 (W)e would anticipate the question of mandatory retirement at age 70 not to be the same as at age 50, but perhaps we say this because of the increasing difficulties that a plaintiff might have to show that at the greater age the state had not made out a factually rational argument.
 
 
 31
 Murgia v. Commonwealth of Massachusetts Board of Retirement, 376 F.Supp. 753, 756 n.9 (D.Mass.1974).
 
 
 32
 In any event, just as the courts should dispose of cases if possible on grounds other than by reaching constitutional issues, the courts should also, it seems to me, where the federal legislative picture demonstrates an alertness to an an orderly resolution of a complex societal problem, exercise restraint in intervening under the constitutional cloak in the developmental process on what could only be a piecemeal basis.
 
 
 33
 In the present context, Congressional concern and continuing interest is clear. In the original Act, the Secretary of Labor was charged with undertaking an education and research program and was specifically directed to recommend to Congress any measures he deemed desirable to change the lower or upper age limits. 29 U.S.C. § 622. While employers were not prevented by the Act from taking action otherwise prohibited where age is a bona fide occupational qualification reasonably necessary to the operation of a particular business, or where differentiation is based on reasonable factors other than age, or where there is observance of the terms of seniority systems or pension and similar plans which are not subterfuges to evade the purposes of the Act, or where there is discharge for good cause, § 623(f), the Act makes age itself within the Act's limits an unlawful basis for discrimination. § 623(a). In the 1974 amendments, it was provided that the definition of an employer included "a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State". 29 U.S.C. § 630(b).
 
 
 34
 Currently, we find that the legislative process is an unintermitted one. Both the House and Senate have passed amendatory versions which are now in conference committee, the conferees having been appointed late in October of 1977. It, inter alia, has been agreed by both houses that the maximum age limit shall be 70 rather than 65. See CCH Lab.L.Rep., Employment Practices, Rep. 30, October 20, 1977.
 
 
 35
 The comprehensive legislative scheme as it continues to develop will not, of course, mean, as it does not now, that every employee in every occupation is automatically entitled to stay on to the maximum age limitation. This, obviously, is on the assumption that legislation in the future will continue to recognize § 623(f) factors permitting under-maximum-age employment termination such as good cause discharge, necessary occupational qualification, and bona fide, non-subterfuge employee benefit plans. The maximum age, however, as it is established from time to time in the public interest appears to me in and of itself to import rationality and to preclude challenge by those exceeding the maximum.
 
 
 36
 Turning to the particular case before us, it is noted that the Illinois Age Discrimination Act, as contrasted to the federal statute and most state statutes, does not on its face specify a maximum age. Kennedy v. Community School District No. 7, Champaign County, 23 Ill.App.3d 382, 319 N.E.2d 243, 246-47 (1974). The court in Kennedy, however, rejected a challenge to age 65 retirement by a teacher not only on due process and equal protection grounds but also under the Illinois Age Discrimination Act pointing out that under that legislation, similarly to the federal act, it was not intended to interfere with the operation of non-subterfuge annuity and pension plans. "The long existence of the statutory system of annuities and pensions and its general application to teachers throughout the State demonstrate that the 'retirement system' is not a subterfuge to evade the Age Discrimination Act." 319 N.E.2d at 247.
 
 
 37
 In the case before us, there is not only the rational relationship between the plaintiff's employment status and a non-subterfuge employee benefit plan but also she had gone beyond the maximum age so specified as a matter of national policy at the time of her termination, even though at the time state employees were not included within the federal statutory coverage.
 
 
 38
 Further, under the relaxed Murgia standard which would be applicable to a person past 65, it appears to me, although it was not expressly articulated by the defense, that the age 65 classification, aside from any aspect of declining physical or mental vigor, rationally furthers an educational purpose of the state. It is common knowledge that there is a growing surplus of teachers with the forecast that this surplus will continue to grow in size with many recent graduates majoring in education being unable to find employment. With the lifting of compulsory retirement and the continuing in employment of teachers who otherwise would have retired, it is reasonably foreseeable that those pursuing higher education will turn to other lines of endeavor with the result that when sheer physical or mental disability, or death, thins the ranks there will not be quantitative, and possibly qualitative, replacements.
 
 
 39
 I would hold therefore that the plaintiff has failed to demonstrate an infringement of her constitutional equal protection rights. She also has raised on this appeal a claim of due process violation, both procedural and substantive. I discern no merit in this attack. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).
 
 
 
 [1]
 The Honorable Stanley N. Barnes of the United States Court of Appeals for the Ninth Circuit is sitting by designation
 
 
 [2]
 This case, though filed as a class action, was dismissed before the question of class certification was reached
 
 
 [3]
 This procedure for dismissing or removing a teacher includes a hearing, written notice of charges, a bill of particulars, representation by counsel, cross-examination of witnesses, maintenance of a record of the proceedings, and a decision by majority vote of all members of the board. Ill.Rev.Stat. ch. 122, § 24-12. None of these protections were afforded plaintiff as she was over 65
 
 
 [4]
 Plaintiff urges this court to apply an intermediate or third equal protection test, wherein the challenged law must bear a "substantial relation" to the purpose it seeks to accomplish. The Supreme Court seems to have used such a test in the areas of discrimination based on sex and illegitimacy. See, e. g., Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977); Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); Mathews v. Lucas, 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976); Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). We are compelled to decline plaintiff's invitation as Murgia is clearly dispositive in this regard
 
 
 [5]
 A hearing on defendants' motion to dismiss was set for May 17, 1974. On May 16, however, the district court advised plaintiff's attorney not to bring to the courtroom the witnesses scheduled to testify on her behalf. The next day, the district court announced from the bench its ruling granting the motion to dismiss. Following this announcement, the court granted leave to plaintiff to submit an offer of proof summarizing the evidence which would have been presented had the hearing gone forward. On May 22 the district court issued its memorandum opinion and order