**Lois PALMER, Plaintiff-Appellant,**

**v.**

**Frank TICCIONE, Howard Hayes, Benjamin Giambabio, William O'Connell, William Gargiulo, Robert Jacob, N. Paul Buscemi, and The School Board of the Copiague Union Free School District # 5, Defendants-Appellees.**

**No. 466, Docket 77-7444.**

United States Court of Appeals, Second Circuit.

Argued Jan. 23, 1978.

Decided May 16, 1978.

---

Jonathan A. Weiss, New York City, for plaintiff-appellant.

Charles D. Maurer, Garden City, N. Y. (Henry A. Weinstein, Garden City, N. Y., on the brief), for defendants-appellees.

Before HAYS and GURFEIN, Circuit Judges, and BRYAN, District Judge.*

* Honorable Frederick van Pelt Bryan, United States District Judge for the Southern District of New York, sitting by designation. Judge Bryan had voted to affirm. He unfortunately passed away before this opinion was drafted. As a result, his concurrence could not be recorded.

HAYS, Circuit Judge:

Appellant, Lois Palmer, commenced this action under 42 U.S.C. § 1983 (1970) for age discrimination in violation of the equal protection and due process guarantees of the Fourteenth Amendment. The district court granted the defendants' motion to dismiss for want of a substantial federal question. For the reasons stated below, we affirm the dismissal of the complaint.

## I

The facts are undisputed. Appellant has been a teacher since 1943. She has been employed by the defendant Copiague Union Free District # 5 as a kindergarten teacher since the 1961–62 school year. She received tenure at the end of the 1963–64 school year. In February 1975, she reached the age of 70. On May 15, 1975, she met with defendant N. Paul Buscemi, the Copiague superintendent of schools. He informed her that she was to be retired at the end of the school year because she had reached the retirement age of 70. This decision was subsequently ratified by the Copiague school board, and the New York State Retirement System was directed to place Mrs. Palmer on retirement status as of August 25, 1975.

It is not disputed that appellant is willing and able to teach. Her performance as a teacher was rated satisfactory in each year of her employment. In the last evaluation, made just before she was retired in 1975, her principal recommended that she be re-hired, "[s]ubject to review of compulsory retirement under New York State Education Law."

Appellant contends that retirement solely on the basis of her age violates her constitutional and state law rights. Essentially, she claims: that compulsory retirement at age 70 violates the equal protection clause; that it creates an irrebuttable presumption of incompetency based on age; that, as a tenured teacher, she is entitled to a hearing before termination; and that, in the alternative, the New York Education Law should be read to prohibit compulsory retirement or, if not, to require a hearing before termination.

## II

Compulsory retirement systems have come under constitutional attack in several contexts. These equal protection and due process challenges have been rejected by this and other courts. The only exception is *Gault v. Garrison*, 569 F.2d 993 (7th Cir. 1977). In that case, the Seventh Circuit ruled that a retired teacher is entitled to a trial on her age discrimination claim. Because *Gault* involves a factual situation very similar to that of the instant case—the major difference is that the retirement age in *Gault* was 65, not 70—and because we disagree with the *Gault* holding, we think it appropriate to focus on this issue once again.

The ruling in *Gault* is premised on the implications of the Supreme Court's most recent decision in this area. In *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976), the Court upheld a state law requiring the mandatory retirement of uniformed police at age 50. First, *Murgia* established that the proper standard for equal protection review in a case challenging a compulsory retirement statute is the rational basis test. *Id.* at 312–14, 96 S.Ct. 2562. Applying this standard, the Court found that forced retirement at age 50 did foster the purpose identified by the state; it assured the continued physical preparedness of the state's uniformed police. *Id.* at 314–16, 96 S.Ct. 2562. In *Murgia*, there had been a trial, and there was evidence in the record to support the conclusion that physical preparedness is rationally related to age.

As in the instant case, but unlike *Murgia*, *Gault* involved an appeal from an order dismissing the complaint. The *Gault* court assumed that the strongest justification for a retirement law for teachers is to remove those who are unfit. Working from that premise, it held that, absent an evidentiary showing, there was no reason to assume that there is any relationship between advancing age and fitness to teach. *Gault* distinguished *Murgia* as involving a ques-

tion of whether physical fitness declines with age, and noted that there was evidence in the record to support the conclusion that it does. It contrasted this with the question whether teaching ability, which involves predominately mental skills, similarly declines with age. Absent an evidentiary showing, the court saw no reason to assume that it does; in fact, it speculated that the knowledge and experience necessary for teaching increases with age.[1] Accordingly, it remanded for further proceedings to determine whether compulsory retirement of teachers at age 65 is rationally based. 569 F.2d at 996.

We decline to follow *Gault* for two reasons. First, while there is a valid distinction between the instant case and *Murgia*, we cannot distinguish the prior cases that have sustained compulsory retirement statutes for occupations that involve primarily mental skills. In *Johnson v. Lefkowitz*, 566 F.2d 866 (2d Cir. 1977), we upheld the constitutionality of § 70 of the New York State Retirement and Social Security Law (McKinney's 1971), which requires tenured civil servants to retire at age 70. In *Johnson*, the plaintiff had been dismissed from his position as senior attorney in the Real Property Bureau of the state's law department. In *Rubino v. Ghezzi*, 512 F.2d 431 (2d Cir.), *cert. denied*, 423 U.S. 891, 96 S.Ct. 187, 46 L.Ed.2d 122 (1975), we upheld the constitutionality of the mandatory retirement of state judges at age 70. And, in *Weisbrod v. Lynn*, 383 F.Supp. 933 (D.D.C. 1974), *aff'd*, 420 U.S. 940, 95 S.Ct. 1319, 43 L.Ed.2d 420 (1975), mandatory retirement of federal civil servants at age 70 was upheld as constitutional, even though the statute undoubtedly requires the retirement of some civil servants who are engaged in occupations that involve primarily mental skills. *Cf. Weiss v. Walsh*, 324 F.Supp. 75

(S.D.N.Y.1971), *aff'd*, 461 F.2d 846 (2d Cir. 1972), *cert. denied*, 409 U.S. 1129, 93 S.Ct. 939, 35 L.Ed.2d 262 (1973) (denial of state-endowed chair to college professor over 65 is not unconstitutional age discrimination).

■ Second, *Gault* too narrowly conceives the possible rational bases for a compulsory retirement statute. Unrelated to any notion of physical or mental fitness, a state might prescribe mandatory retirement for teachers in order to open up employment opportunities for young teachers—particularly in the last decade when supply has outpaced demand, or to open up more places for minorities, or to bring young people with fresh ideas and techniques in contact with school children, or to assure predictability and ease in establishing and administering pension plans. A compulsory retirement system is rationally related to the fulfillment of any or all of these legitimate state objectives.

■ Thus, it would seem clear that, *Gault* notwithstanding, the New York State compulsory retirement system for teachers is immune from constitutional attack. However, appellant seeks to distinguish the instant case on two grounds. First, she argues that, since the statute must "rationally [further] the purpose *identified* by the State, . . ." *Murgia, supra*, 427 U.S. at 314, 96 S.Ct. at 2567 (emphasis added); *San Antonio School District v. Rodriguez*, 411 U.S. 1, 17, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), we may only look to the purpose of the compulsory retirement law as evidenced by the statutory scheme. Section 510(1)(b) of the New York Education Law (McKinney's 1969), which provides for compulsory retirement at the employer's discretion, is part of a statute governing retirement benefits.[2] Thus, appellant contends that the

---

1. *Gault* also distinguished *Murgia* on another ground. It noted that, as between teachers and policemen, the consequences of lack of fitness differ substantially. If a police officer is not fit, his inability to perform could become a matter of life or death. Thus, a general, perhaps overly broad rule is justified to prevent such occurrences. If a teacher becomes unfit, however, the consequences are not so immediate. There

is adequate time to effect his or her removal via appropriate procedural means. 569 F.2d at 996.

While this distinction has merit, we do not find it sufficiently persuasive in view of the considerations expressed below.

2. N.Y.Ed.Law § 510(1)(b) (McKinney's 1969) provides:

only possible purpose of the statute is to further the efficient distribution of retirement benefits. She argues that compulsory retirement is not rationally related to this purpose because the statute provides for compulsory retirement at the discretion of the employer. This encourages unpredictability in the administration of the pension program. Also, she contends that, to the extent that able teachers are forced to retire at age 70, compulsory retirement defeats the purpose of the statute by adding unnecessarily to the retirement rolls. Second, appellant argues that because this case involves a statute that provides for discretionary rather than mandatory compulsory retirement, the precedents are inapposite.

Closer scrutiny of the statute provides the answer to the first argument. Section 510(1)(b) is permissive; it allows individual school boards to implement compulsory retirement policies. *See Harren v. Middle Island Central School District # 12*, No. 12656/74 (Sup.Ct.1974), aff'd 49 A.D.2d 879, 373 N.Y.S.2d 20 (1975). Thus, if an individual school board adopts a compulsory retirement policy, whether mandatory or discretionary, it may be to further any of the purposes suggested above, without regard to the narrow context of the empowering statute. Since such a board adopted policy would be supportable as rationally based, we would be constrained to uphold it as a legitimate exercise of a statutorily authorized power.

With regard to the second argument, we fail to see its relevance. The record is inconclusive on whether Copiague has adopted a mandatory or discretionary retirement policy. There is nothing in the record to indicate that the appellant was discharged under anything other than an across-the-board, mandatory retirement policy. If so, then, as noted above, the board's action is clearly immune from constitutional attack. However, even if appellant was retired under a discretionary policy, the result would be the same. First, a discretionary retirement policy would still be rationally related to a legitimate state goal: it would further any of the purposes noted above, with the exception of those related to the maintenance of pension plans. Second, the *Johnson* case would still be on point. *Johnson* involved § 70 of the New York Retirement and Social Security Law (McKinney's 1971), a statute that is functionally equivalent to discretionary retirement. Subsection (c) provides that a civil servant may be retained beyond age 70 under certain conditions. If he or she is retained, however, he or she is subject to termination upon sixty days' notice. Johnson had been given two extensions and was then summarily retired. The court found no constitutional infirmity with that system. We find none in the instant case either.

■ We reach the same conclusion with regard to the due process attack on compulsory retirement as establishing an irrebuttable presumption. That claim is analytically very similar to the equal protection one. If the statutory classification is sustainable as rationally based, then it should not fall because it might also be labeled a presumption. Moreover, the due process claim was before the Court in *McIlvaine v. Pennsylvania*, 415 U.S. 986, 94 S.Ct. 1583, 39 L.Ed.2d 884 (1974), and *Weisbrod v. Lynn*, 420 U.S. 940, 95 S.Ct. 1319, 43 L.Ed.2d 420 (1975), aff'g 383 F.Supp. 933 (D.D.C.1974), and this court in *Rubino v. Ghezzi*, 512 F.2d 431 (2d Cir.), *cert. denied*, 423 U.S. 891, 96 S.Ct. 187,

---

Any member who has attained age seventy may be retired at his own request or at the request of his employer . . . if throughout the year immediately preceding . . . he shall have been in service as a teacher in this state.

On its face, § 510 seems to be more concerned with eligibility for retirement benefits than with compulsory retirement. Article 11 of the Education Law, of which § 510 is a part, has been characterized as a statute "primarily designed to *provide benefits* to certain qualified superannuated or disabled [teachers] . . ." not "to enforce a [teacher's] retirement without consent . . . ." *Bevan v. New York State Teachers' Retirement System*, 44 A.D.2d 163, 165, 355 N.Y.S.2d 185, 187–88 (1974) (emphasis in original) (construing § 511, a companion section related to disability retirement).

46 L.Ed.2d 122 (1975). In each case it was rejected.

■ Appellant also claims that she was entitled to a due process hearing before being retired. However, we can see no purpose for a hearing if appellant was retired under an across-the-board, mandatory retirement system. And even if a discretionary system was employed, we would be constrained to follow *Johnson, supra,* and deny this claim. In *Johnson,* we held that a hearing is not required because the benefits of holding such a hearing are outweighed by the burdens imposed upon the state by requiring a hearing in every case. 566 F.2d at 869.

## III

Appellant also raises several state law claims. She contends that compulsory retirement is forbidden by N.Y.Ed.Law § 3027 (McKinney's 1969).[3] She also asserts that § 510(1)(b) should be read in conjunction with §§ 3018–3022 of the Education Law, governing the dismissal and discipline of tenured teachers, to, amongst other things, require a hearing before termination.

■ The first question has, apparently, never been determined by the New York

courts. The second, however, has been, and the result has been unfavorable to the appellant. *Harren v. Middle Island Central School District # 12,* No. 12656/74 (Sup.Ct. 1974), *aff'd,* 49 A.D.2d 879, 373 N.Y.S.2d 20 (1975).[4] In any case, we do not think it necessary to decide these issues. Since the underlying federal claim was properly dismissed, the denial of pendent jurisdiction over the state claims was proper. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Chasteen v. Trans World Airlines, Inc.,* 520 F.2d 714 (8th Cir. 1975). Moreover, pendent jurisdiction was properly denied because the state courts are a more appropriate forum for these issues. *Pride v. Community Sch. Bd. of Bkly'n, N.Y. Sch. Dist. # 18,* 482 F.2d 257, 272 (2d Cir. 1973).

## IV

■ Today's decision is not intended as an endorsement of compulsory retirement for teachers or compulsory retirement in general. Rather, we are aware of the many older Americans who continue to be able and eager to work beyond age seventy. We are also aware of the debilitating effects that compulsory retirement has on many such individuals, with regard to their economic situation, their health, their outlook on life, and the continuing opportunities for

---

3. N.Y.Ed.Law § 3027 (McKinney's 1970) provides:

   Notwithstanding any provision of law to the contrary, no board of education . . . shall hereafter prohibit, prevent, disqualify or discriminate against any person who is physically and mentally qualified from competing, participating, or registering for an examination for or from qualifying for, a position as teacher, or be penalized in a final rating by reason of his or her age. Any such rule, requirement, resolution, regulation, or penalization of such board shall be void.

   Nothing herein contained, however, shall prevent such board from adopting reasonable minimum or maximum age requirements for positions which require extraordinary physical effort, except where age limits for such positions are already prescribed by law.

   Section 3027 seems to be aimed at prohibiting age discrimination in hiring. However, its language could be read to encompass a prohibi-

tion against discrimination from continuing qualification as a teacher, i. e., against compulsory retirement.

4. In various other contexts, the New York courts have consistently held that retirement statutes or regulations are not inconsistent with or modified by statutes providing for removal only for incompetency and/or only after a hearing. *See People ex rel. O'Brien v. Scannel,* 53 App.Div. 161, 65 N.Y.S. 832, *aff'd,* 164 N.Y. 572, 58 N.E. 1091 (1900) (Retirement of fireman due to disability is not a "removal" for the purposes of a statute requiring a hearing for removal for incompetency or misconduct); *Geary v. Philips,* 53 Misc.2d 337, 278 N.Y.S.2d 506 (1967) (Police: retirement is not a removal without a hearing); *Humbeutel v. City of New York,* 125 N.Y.S.2d 198 (Sup.Ct.1953), *aff'd,* 283 App.Div. 1011, 131 N.Y.S.2d 445 (1954), *aff'd,* 308 N.Y. 904, 126 N.E.2d 569 (1955) (Police: retirement is not removal without cause barred by statute).

fulfillment.[5] However, in determining the desirability of compulsory retirement, these considerations must be weighed against the social goals that compulsory retirement furthers. This is precisely the type of clash of competing social goals that is best resolved by the legislative process. The federal courts shóuld not second guess the wisdom or propriety of such legislative resolutions as long as they are rationally based.

Congress has recently considered this issue and, after extensive hearings, has amended the Age Discrimination in Employment Act of 1967.[6] The amendments prohibit, with some exceptions, the compulsory retirement of people under seventy, and of federal employees at any age.[7] The original Act requires the Secretary of Labor to make annual reports concerning the effects of the Act, taking into account demographic changes.[8] The 1978 amendments impose on the Secretary the further duty of reporting, by 1981, on the effects of the amendments and the feasibility of extending their coverage.[9] We note these developments because we are persuaded that they reinfcrce today's decision. There is no question but that the passage of the 1978 amendments to the Age Discrimination in Employment Act was the result of a process that was fair, deliberate, and well informed. Moreover, Congress has provided a mechanism for continually reassessing the effects and the wisdom of its actions on this issue. The superior ability of Congress to collect data and to resolve competing social goals, as well as the flexibility resulting from its ability to monitor the effects of its actions and to make adjustments accordingly, mark this issue as one which the Constitution has appropriately left to the legislative processes, both state and federal.

Affirmed.

---

5. Evidence documenting both the continued ability of older workers and the hardships resulting from compulsory retirement is reported in the legislative history of the 1978 amendments to the Age Discrimination in Employment Act of 1967, discussed *infra.* S.Rep.No. 95–493, 95th Cong., 1st Sess., 3–4 (1977), U.S. Code Cong. & Admin.News 1978, p. - — -.

6. 29 U.S.C. § 621 *et seq.* (1976).

7. The Age Discrimination in Employment Act Amendments of 1978, P.L.No.95–256, § 3(a) amending 29 U.S.C. §§ 631 and 633a, and § 5 amending 5 U.S.C. § 8335 (1976) and repealing 5 U.S.C. § 3322 (1976). The 1978 amendments contains several exceptions. Tenured university teachers and certain executives are excepted from coverage after age 65. P.L.No.95 256,

§ 3(a). Certain federal employees, including air traffic controllers, law enforcement officers, firefighters, Alaskan Railroad employees, and federal employees in the Panama Canal Zone, continue to be subject to mandatory retirement. *Id.* § 5, amending 5 U.S.C. § 8335 (1976).

8. Section 13 of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 632 (1970).

9. Section 6 of the Age Discrimination in Employment Act Amendments of 1978, P.L.No.95–256, amending § 5 of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 624 (1976).