Anna **FREUND**, Ruth Arnold, Alice Laughlin, Joseph Pikus, Kathryn A. Smith, Kenneth Benson, Evelyn Borgen, Donald Mintz, Meyer Schreiber, Albert C. Shaw, H. Williard Stern, Lilyan B. Wright, Robert W. Harper, Plaintiffs,

v.

James J. **FLORIO**, Edward D. Goldberg, Herman James, William Maxwell, Elsa Gomez, Irvin Reid, Robert A. Scott, Vera King Farris, George Pruitt, Harld W. Eickhoff, Arnold Speert, Defendants.

Civ. A. No. 91–875.

United States District Court, D. New Jersey.

June 3, 1992.

---

703

Paul J. Burns, Dwyer & Canellis, P.A., Westfield, N.J., for plaintiff.

Grey J. Dimenna, Deputy Atty. Gen., Office of the Atty. Gen. of New Jersey, Trenton, N.J., for defendants.

## OPINION

SAROKIN, District Judge.

This action challenges the constitutionality of a statute which permits mandatory retirement of tenured faculty in state institutions at age 70. For the reasons hereinafter expressed, such legislation must be sustained if there is a rational basis for its enactment. However, many of the reasons proffered to justify such mandatory retirement would appear to support any act of age discrimination. Making way for the young, planning for the future, creating greater diversity, injecting new energy, reducing costs, eliminating the potentially ineffective, and avoiding the difficulty and embarrassment of identifying them, could be offered as justifications for terminating the aged in almost any situation, irrespective of their actual skills, performance, and ability to continue in employment.

Despite the court's recognition that the rational bases offered here are the same as those often used to justify acts of age discrimination, the court is compelled to conclude that the rational basis test applies in this matter and that the mandatory retirement statute satisfies this undemanding standard.

As a result, the state's colleges may be deprived of some of their greatest teachers; but the state has the right to do so, in the hope that they will be replaced, if not now, eventually, by teachers of equal or greater competence and diversity.

*Background*

This action was commenced with the filing of a complaint on February 28, 1991 by the plaintiffs, thirteen previously and currently tenured faculty members at various New Jersey State Colleges. Named as de-

fendants were the State of New Jersey, James J. Florio, the New Jersey Department of Higher Education, the Chancellor of Higher Education, New Jersey's nine State Colleges and their presidents.

Plaintiffs maintain that N.J.S.A. 10:5–2.2, which grants institutions of higher education within New Jersey the discretion to retire tenured faculty at age 70, is unconstitutional, constituting discrimination on the basis of age. Plaintiffs allege that defendants have violated the equal protection and due process clauses of the Fourteenth Amendment of the United States Constitution and parallel provisions of the New Jersey Constitution, Article I, Paragraphs 1, 5 & 19. Plaintiffs seek a declaratory judgment that N.J.S.A. 10:5–2.2 is unconstitutional, an injunction preventing defendants from requiring plaintiffs to retire pursuant to the statute, compensatory and punitive damages, and attorney's fees.

Defendants have now moved for judgment on the pleadings on the grounds that, under the facts alleged, N.J.S.A. 10:5–2.2 does not violate the equal protection and due process provisions of either the U.S. Constitution or the New Jersey Constitution. Additionally, defendants contend that this action is barred in its entirety by the grant of immunity to states in the Eleventh Amendment of the U.S. Constitution.

*Claims under the United States Constitution*

■ N.J.S.A. 10:5–2.2 ("the Faculty Retirement Act") states that:

Notwithstanding the provisions of section 1 of P.L.1938, c. 295 (C.10:3–1) and section 8 of P.L.1962, c. 37 (C.10:5–2.1), an employee who has attained 70 years of age who is serving under a contract of tenure or similar arrangement providing for tenure at a public or private institution of higher education may, at the option of the institution, be required to retire.[1]

1. N.J.S.A. 10:3–1 prohibits age discrimination against applicants forty years of age or older in public employment. With certain exceptions, the provision prohibits forced retirement "upon the attainment of a particular age unless the public employer can show that the retirement

age bears a manifest relationship to the employment in question or that the person in [public] service ... is unable to adequately perform his duties. A contract of tenure ... shall not bar a public employer" making such a showing. N.J.S.A. 10:5–2.1 provides, *inter alia,* that noth-

It is one of plaintiffs' claims that this Law violates the Equal Protection and Due Process Clauses of the Federal Constitution.[2]

Section 1 of the Fourteenth Amendment of the United States Constitution states·in pertinent part:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State·deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

The United States Supreme Court has developed a multi-tiered approach to determining violations of equal protection rights. The general rule is that "classifications that neither regulate suspect classes nor burden fundamental rights must be sustained if they are rationally related to a legitimate governmental interest." *In re Asbestos Litigation*, 829 F.2d 1233, 1238 (3d Cir.1987), *cert. denied sub nom. Owens–Illinois, Inc. v. Danfield*, 485 U.S. 1029, 108 S.Ct. 1586, 99 L.Ed.2d 901 (1988). In conducting rational basis review, a court need not limit itself to purposes actually identified in the legislative history, but may "hypothesize the motivations of the state legislature to find a legitimate objective promoted by the provision under attack" and "the legitimate purpose need not be the primary purpose of the provision." *Malmed v. Thornburgh*, 621 F.2d 565, 569 (3d Cir.1980), *cert. denied*, 449 U.S. 955, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980) (citations .omitted).

▮ The United States Supreme Court has recognized that age is neither a suspect class nor a quasi-suspect class, like sex, meriting an intermediate level of scrutiny; rather, age categories trigger only the lowest level of scrutiny, rational basis review.

*Gregory v. Ashcroft*, 501 U.S. ——, 111 S.Ct. 2395, 2406, 115 L.Ed.2d 410 (1991); *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976). Further, the entitlement to continued governmental employment is not a fundamental right that would trigger heightened scrutiny in its own right. *United Bldg. & Const. Trades Council v. Mayor & Council of City of Camden*, 465 U.S. 208, 104 S.Ct. 1020, 79 L.Ed.2d 249 (1984). Thus, the appropriate standard of review for the Faculty Retirement Act is the rational basis test. This standard applies to both the plaintiffs' equal protection claim and to their due process allegations. *Malmed*, 621 F.2d at 573–76.

In other circuits, courts have repeatedly found that age-based faculty retirement provisions, like those in the Faculty Retirement Act, do not violate the federal constitution. *See, e.g., Lamb v. Scripps College*, 627 F.2d 1015, 1021–22 (9th Cir.1980) (California legislature could reasonably have concluded that state statute permitting compulsory retirement by private employers of tenured private college professors aged 65 to 69 would "open up employment opportunities for younger professors and for minorities," "bring in younger faculty with fresh ideas and techniques," "stimulate performance among younger faculty members by assuring a predictable number of available positions," "allow universities to plan in advance for staffing needs," "and avoid the difficulties inherent in evaluating the individual performances of professors aged 65 and over"); *Palmer v. Ticcione*, 576 F.2d 459 (2d Cir.1978), *cert. denied*, 440 U.S. 945, 99 S.Ct. 1421, 59 L.Ed.2d 633 (1979) (upholding dismissal on pleadings of claim challenging constitutionality of state law permitting school boards to implement compulsory age 65 retirement policies for teachers, on grounds that "a

ing contained in the Law Against Discrimination prevents an employer from terminating someone found unable to adequately perform as an employee or from discriminating among employees based on their performance.

**2.** Although defendants have raised a challenge to this court's jurisdiction under the Eleventh

Amendment, even if defendant state colleges were found to be entitled to Eleventh Amendment immunity, this action could still proceed against defendant state officials for prospective injunctive relief. Therefore, the federal constitutional issue is necessarily raised by the instant motion.

state might prescribe mandatory retirement for teachers in order to open up employment opportunities for young teachers ... or to open up more place for minorities, or to bring young people with fresh ideas and techniques in contact with school children, or to assure predictability and ease in establishing and administering pension plans"); *Crozier v. Howard,* 772 F.Supp. 1192, 92–93 (W.D.Okla.1991) (upholding age 70 mandatory retirement policy for tenured professors enacted by Board of Regents for Oklahoma Colleges; defendants had "adduced evidence that physical and mental abilities decline with increasing age," and mandatory retirement rule was rationally related to the state interest in quality education and getting the most qualified professors "by allowing the promotion of younger faculty members at a foreseeable time; infusing new ideas; creating predictable openings for new staff; permitting the university to plan for its staffing needs; and avoiding difficult and emotional alternative termination procedures"); *Mittelstaedt v. Board of Trustees of University of Arkansas,* 487 F.Supp. 960 (E.D.Ark.1980) (University policy requiring retirement at age 67 was constitutional); *McAloon v. Bryant College of Bus. Admin.,* 520 F.Supp. 103 (D.N.H. 1981) (upholding state law permitting compulsory retirement at age 65 for university faculty); *see also Fazekas v. University of Houston,* 565 S.W.2d 299 (Tex.Civ.App. 1978), *appeal dismissed,* 440 U.S. 952, 99 S.Ct. 1487, 59 L.Ed.2d 765 (1979); *Elliott v. Board of Trustees,* 29 Wash.App. 890, 631 P.2d 985 (Wash.App.1981); *Kubik v. Scripps College,* 118 Cal.App.3d 544, 173 Cal.Rptr. 539 (Cal.App.1981).

Similarly, in *Malmed v. Thornburgh,* the Third Circuit upheld a provision of the Pennsylvania Constitution requiring retirement of state judges at the age of 70 in the face of a challenge based on the federal Equal Protection Clause. 621 F.2d 565. The court held that the mandatory retirement provision was appropriately assessed by the rational relation test. Applying this standard, the court found that the retirement provision was rationally related to the legitimate state interest in augmenting judicial resources by increasing the number of judges available for part-time post-retirement service, eliminating the unpleasantness of selectively removing aged and disabled judges, and preventing the great harm that a few senile judges might do. Finally, the court noted that the mandatory retirement provision conformed to recommendations of the American Bar Association "and corresponds with the current trend toward mandatory retirement at seventy in other public and private employment." *Id.* at 572. *See also Vance v. Bradley,* 440 U.S. 93, 101, 99 S.Ct. 939, 944, 59 L.Ed.2d 171 (1979) (rejecting equal protection challenge to federal statute requiring retirement at age sixty of employees covered by the foreign service retirement system, on grounds that provision served the purpose of stimulating performance by increasing opportunities for promotion); *Murgia,* 427 U.S. at 315–16, 96 S.Ct. at 2567–68 (rejecting equal protection challenge to state statute mandating retirement of uniformed state patrolmen at age fifty, on grounds that "[t]here is no indication that [the state law] has the effect of excluding from service so few officers who are in fact unqualified as to render age 50 a criterion wholly unrelated to the objective of the statute").

Courts within the Third Circuit have also recognized that mandatory retirement policies may be rationally related to legitimate state purposes within an educational context. In *Klain v. Pennsylvania State University,* 434 F.Supp. 571 (M.D.Pa.1977), *aff'd without published opinion,* 577 F.2d 726 (3d Cir.1978) the district court upheld the constitutionality of a mandatory retirement policy imposed on all faculty and staff of the Pennsylvania State University at age 65. The court found that the policy was rationally related to the purposes of providing motivation to younger employees and allowing the University to maintain a continuous, planned education program by forecasting future staffing needs. *Id.* at 576. In *Kuhar v. Greensburg–Salem School District,* 616 F.2d 676 (3d Cir.1980), the Third Circuit rejected an equal protection clause claim that it was irrational to

apply a mandatory age sixty-five retirement policy to plaintiff, a Junior High School assistant principal, where the legislature had amended the policy to require retirement at seventy, but the amendment had not taken effect at the date plaintiff reached the age of sixty-five. Although "the issue of the validity of the mandatory retirement age itself [was] not before [the] court," the Third Circuit stated that the age sixty-five retirement policy was rationally related to several state interests enunciated by defendants, including the interest in promoting new ideas, reducing financial costs, and providing more opportunities for advancement for younger teachers. *Id.* at 678–679, nn. 4 & 6.

Finally, in *University of Medicine and Dentistry v. University of Medicine and Dentistry of New Jersey, Council of American Association of University Professors Chapters*, 223 N.J.Super. 323, 538 A.2d 840 (App.Div.1988), *aff'd*, 115 N.J. 29, 556 A.2d 1190 (1989), the Appellate Division held that, under N.J.S.A. 10:5–2.2, the decision by New Jersey State colleges to retire tenured employees upon reaching age 70 was a nonnegotiable management prerogative, not subject to collective negotiation. The court recognized several legitimate state interests to which the Faculty Retirement Act, the same law at issue in the present suit, was rationally related, including:

> an institution's need to bring in new faculty, to deploy its faculty in different academic areas and to open up tenure and promotion positions in order to retain its current faculty and to afford equal employment opportunities.... Nothing could be more germane to the educational goals of an institution of higher education than the vitality of that institution as reflected in its ability to hire, retain and deploy its faculty. Thus, it is unquestionable that the issue of mandatory

retirement encompasses an inherent management prerogative.

*Id.* at 334–6, 538 A.2d 840.

In opposition to this weight of precedent, plaintiffs make three points in favor of their claim that no rational basis exists for the age distinction in the Faculty Retirement Act. First, they cite two cases in which mandatory retirement provisions were found not to be rationally related to the purposes they purportedly served. Second, plaintiffs suggest that the legislative history of 29 U.S.C. § 631(d), a parallel federal mandatory retirement law, "reveals an inherent skepticism of the validity and reasonableness of the exclusion of tenured faculty members" from "the general discrimination protections." Plaintiff Opp. 3. Third, plaintiffs claim that the objectives cited by defendants as purposes rationally served by the Faculty Retirement Act could be "achieved without resorting to the means adopted." *Id.* at 5.

In *Sabo v. Casey*, 757 F.Supp. 587 (E.D.Pa.1991), *summarily rev'd*, No. 91–1114 (3d Cir. Aug. 28, 1991), the district court overturned a provision in the Pennsylvania Constitution mandating retirement of judges upon reaching the age of seventy on the grounds that it violated the Equal Protection Clause.[3] The court first found that the mandatory retirement policy, coupled with the availability of senior status at reduced pay, was not rationally related to the goal of increasing judicial resources or reducing cost, since there was no rational reason for paying senior judges, who often worked more than others, less than non-retired judges. *Id.* at 603. The court further noted that, given the availability of senior status, the retirement policy was not rationally related to the goal of eliminating senile judges or preventing the embarrassing necessity of removing particular judges.[4] *Id.* at 604–5. Finally, the court

---

**3.** The *Sabo* Court explicitly rejected the Third Circuit's analysis in *Malmed* of the same Pennsylvania constitutional provision, stating that *Malmed* "took a somewhat tautological approach, ... essentially [holding] that because the stated objectives of the framers were legitimate, the means chosen to achieve those objectives were rational." *Sabo* challenges the ra-

tionality of the mandatory retirement provision as a means of accomplishing each of the proffered ends. 757 F.Supp. at 602–03.

**4.** The court also questioned the rationality of the retirement provision as a means of insuring superior judicial performance based on a finding that expert testimony had demonstrated

rejected the rationale of compliance with a trend toward mandatory retirement ages, on the grounds that the trend in Pennsylvania was toward eliminating mandatory retirement in public office. *Id.* at 606. Because *Sabo* was summarily reversed, it cannot be determined which of its premises were rejected by the Third Circuit; however, the circuit court's summary action suggests that the approach adopted by the district court, with its relatively searching level of scrutiny, was inappropriate for review of a mandatory retirement policy such as that at issue in this proceeding, which is subject only to rational basis review.

The only other case brought to the court's attention in which a mandatory retirement policy was struck down was a Seventh Circuit case, *Gault v. Garrison,* 569 F.2d 993 (7th Cir.1977), *cert. denied,* 440 U.S. 945, 99 S.Ct. 1421, 59 L.Ed.2d 633 (1979) (requiring trial to determine whether compulsory retirement of high school teachers at age sixty-five under state statute was rationally based). Of course, *Gault* is not controlling authority in this circuit. Further, many courts have faulted *Gault* for incorrectly placing the burden of proof upon defendants in establishing that a rational basis existed for the regulation and for considering only legislative purposes articulated by the state at the time the statute was enacted. *See, e.g., Palmer v. Ticcione,* 576 F.2d 459, 461–62 (2d Cir. 1978), *cert. denied,* 440 U.S. 945, 99 S.Ct. 1421, 59 L.Ed.2d 633 (1979); *Lamb v. Scripps College,* 627 F.2d 1015, 1019–21 & n. 9 (9th Cir.1980); *see also Malmed v. Thornburgh,* 621 F.2d 565, 569 (3d Cir. 1980) (a court "may even hypothesize the motivations of the state legislature to find a legitimate objective promoted by the provision under attack"). The Seventh Circuit itself has implicitly limited *Gault* by upholding a mandatory retirement statute involving judges in the face of an equal protection challenge. *Trafelet v. Thompson,* 594 F.2d 623 (7th Cir.1979), *cert. denied,* 444 U.S. 906, 100 S.Ct. 219, 62 L.Ed.2d 142 (1979).

 In view of these precedents, the court concludes that the Faculty Retirement Act does not violate the Fourteenth Amendment's Equal Protection clause. As the Appellate Division held in *American Association of University Professors,* the Faculty Retirement Act is rationally related to a number of legitimate ends of educational policy, including creating opportunities for younger faculty and for increased diversity within the faculty. 223 N.J.Super. at 335–36, 538 A.2d 840. Further, as the Third Circuit has said, such retirement policies serve the state's legitimate interest in promoting new ideas, reducing financial costs, and providing more opportunities for advancement for younger teachers. *Kuhar,* 616 F.2d at 678–679, nn. 4 & 6.

Even if *Sabo* embodied an appropriate level of scrutiny for rational basis review, it would not require the court to reach a different result. In *Sabo,* the juxtaposition of requiring retirement of judges while offering them continued employment on senior status arguably rendered certain reasons proffered for the retirement policy— such as avoiding the damage that a senile judge could do—irrational by any measure. In contrast, the purposes suggested for permitting mandatory faculty retirement display no such logical inconsistency with the means chosen.

 Certain potential purposes of the Faculty Retirement Act may appear to express a naked preference for younger employees or for a characteristic so invariably associated with youth as to sanction discrimination against older employees merely on the basis of their age. For example, providing opportunities for the advancement of younger faculty at the expense of older faculty merely expresses a preference for youth over age. Even under rational basis review, the court finds that such a purpose, standing alone, would be insufficient to justify an age-discriminatory statute. However, there are sufficient purposes served by the statute devoid of such

---

without rebuttal that there is no correlation between mental incapacity in professionals and

increased age.

a discriminatory taint to withstand rational basis scrutiny. For example, mandatory faculty retirement policies may open up opportunities for minorities, stimulate performance improvement among the faculty over-all, allow universities to better plan for staffing needs, and avoid the difficulties in evaluating individual performance to determine, on an individual basis, which professors over 70 have become less able to teach or research effectively. *See Lamb,* 627 F.2d at 1021–22.

Certain of the explanations proffered for a mandatory retirement policy also appear to raise factual contentions which, under a particularly searching rational basis inquiry, could require evidentiary support and hence might be deemed an inappropriate basis for a judgment on the pleadings. However, the court does not consider further factual development necessary to resolve this matter for several reasons. First, there are certain rationales, such as the interest in allowing a University to maintain a planned educational program by forecasting future staffing needs accurately, that are compelling merely as a matter of logic, with no factual support required. *Klain,* 434 F.Supp. 571. Second, many of the explanations for mandatory educational retirement policies, such as the interest in promoting new ideas, have been so widely cited by courts, that this court sees no need, under a rational basis standard, for requiring an evidentiary proceeding to establish that faculty over 70 are, for example, less likely to import "fresh ideas" than are younger faculty. *See, e.g., Kuhar,* 616 F.2d 676; *Lamb,* 627 F.2d at 1021 (Cir.); *Palmer,* 576 F.2d 459; *Crozier,* 772 F.Supp. 1192. Third, it is the court's understanding of the showing required under the rational basis standard, that no invariable connection between a means and end must be proven to uphold a challenged regulation. Rather, it is enough if the legislature might have *rationally* concluded that the means chosen would effect the desired end. *See Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 942, 59 L.Ed.2d 171 (1979); *see also Palmer,* 576 F.2d at 461–62 (affirming district court's order granting motion to dismiss

claim challenging constitutionality of state law permitting school boards to implement compulsory age 65 retirement policies for teachers); *Lamb,* 627 F.2d at 1019–21 (affirming district court's order granting motion to dismiss for failure to state a claim an action challenging state statute permitting compulsory retirement by private employers of tenured private college professors aged 65 to 69). For these reasons, the court finds that no purpose would be served by, and no law requires, any further evidentiary showing to establish the rationality of the statute as a means of accomplishing the purposes generally attributed to mandatory retirement policies. Hence, the court concludes that the means employed by the Faculty Retirement Act are sufficiently related to legitimate state interests to withstand rational basis review.

Plaintiffs' counter-arguments are also unavailing. For reasons suggested above, the Seventh Circuit's holding in *Gault* is not determinative: the court finds no persuasive reason for following the direction of a case that is contrary to the teaching of this circuit and of questionable precedential value in its own circuit. *Sabo* has been reversed by the Third Circuit; but the argument for the unconstitutionality of the mandatory retirement policy at issue in *Sabo* was, if anything, stronger than the argument against the statute at issue herein, since the *Sabo* court found the mandatory judicial retirement policy irrational in conjunction with the extension of continued employment opportunities in the form of senior status, an arrangement with no parallel in the present case.

Plaintiffs' further arguments are simply misplaced: the fact that Congress had once considered and refused to enact a provision similar to 29 U.S.C. § 631(d) and has commissioned a study to determine whether it should be continued after 1993 does not establish the constitutional infirmity of mandatory age retirement provisions. Plaintiff Opp. at 3. To the contrary, that Congress decided to exempt retirement of faculty from its proscription of age discriminatory hiring practices, even for a limited period of time, underscores that there is a

constitutionally permissible, rational basis for such retirement policies in an educational context.[5] As the legislative history of § 631(d) states:

Many colleges and universities maintain that for the foreseeable future the number of available faculty positions will be closely related to the number of retirements, thereby making it difficult to employ younger professors, particularly women and minorities. Moreover, the financial burden on already hard-pressed institutions of higher learning may be increased by this legislation, because it may require the retention of highly paid senior employees for additional years. Concerns were expressed by the committee that although it is theoretically possible to discharge tenured faculty for cause, the difficulty of objectively evaluating the performance of such employee[s] makes such good cause discharges difficult. The committee therefore adopted an amendment offered by Senator Chafee to permit colleges and universities to maintain compulsory retirement policies for faculty at age 65 or above who are serving under a contract of unlimited tenure or similar arrangement. . . .

S.Rep. No. 95–493, Oct. 12, 1977, at 8–9 (*reprinted in* 3 U.S.Code Cong. & Ad. News, 95th Cong. 504, 511–512 (1978)) (cited in *McAloon,* 520 F.Supp. at 107; *see also Lamb,* 627 F.2d at 1023 (mandatory retirement of tenured faculty is justified "[i]n light of the unique problems encountered by universities in their efforts to prevent intellectual stagnation and to assure diversity and competence in their faculties") (*citing* 123 Cong.Rec. S17288, S17290–91 (daily ed. Oct. 19, 1977) (remarks of Senators Williams and Moynihan)).

■ Finally, that the objectives served by the Faculty Retirement Act could be "achieved without resorting to the means

adopted" is, if true, irrelevant to analysis under the rational review standard. Plaintiff Opp. at 5. Accordingly, the court concludes that the Faculty Retirement Act violates neither the Equal Protection nor Due Process Clauses of the U.S. Constitution.

*New Jersey State Constitutional Claims*

■ In addition to its claims under the U.S. Constitution, plaintiffs have brought claims under Article I, ¶¶ 1, 5 & 19 of the New Jersey Constitution. Defendants argue both that the Mandatory Retirement Act does not violate these provisions and that this court is barred from ruling on these claims by the Eleventh Amendment.

The court, however, concludes that in this situation, where the underlying federal claim has been dismissed, it would be improper to exercise supplemental jurisdiction over these pendent state law claims. 28 U.S.C. § 1367, codifying the doctrines of pendent and ancillary jurisdiction, sets forth the circumstances in which "[t]he district courts may decline to exercise supplemental jurisdiction over a claim."[6] § 1367(c). These circumstances include if "the claim raises a novel or complex issue of State law" or if "the district court has dismissed all claims over which it has original jurisdiction." *See also United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Chasteen v. Trans World Airlines, Inc.,* 520 F.2d 714 (8th Cir.1975); *Pride v. Community School Board,* 482 F.2d 257, 272 (2d Cir.1973).

Dismissal of plaintiffs' state law claims is appropriate here for both reasons. Ruling on either plaintiffs' allegations or defendants' claim of Eleventh Amendment immunity would require deciding complex and novel issues of state constitutional law and state law concerning the legal status of state colleges. Further, the court's decision dismissing plaintiffs' claim under the

---

**5.** 29 U.S.C. § 631(d) provides that "[n]othing in this chapter shall be construed to prohibit compulsory retirement of any employee who has attained 70 years of age, and who is serving under a contract of unlimited tenure (or similar arrangement . . .) at an institution of higher learning."

**6.** Section 1367 applies to actions commenced on or after December 1, 1990. This action was filed February 28, 1991.

federal constitution deprives it of original jurisdiction over this matter, and at this early stage in the litigation, dismissal of the pendent state claims in a federal forum will result in neither a waste of judicial resources nor prejudice to the parties. Accordingly, the court declines to exercise continued jurisdiction over plaintiffs' state law claims, which are hereby dismissed.

*Conclusion*

For the foregoing reasons, defendants' motion for judgment on the pleadings will be granted and this action dismissed.