Jules M. O'NEIL, Plaintiff-Respondent,

v.

Robert P. BAINE, Jr., et al.,
Defendants-Appellants.

No. 60792.

Supreme Court of Missouri,
en banc.

July 11, 1978.

John D. Ashcroft, Atty. Gen., William F. Arnet, S. Joel Wilson, Asst. Attys. Gen., Jefferson City, for appellants.

John T. Sluggett, III, Clayton, for respondent.

Fred Boeckmann, Clayton, amicus curiae.

SIMEONE, Judge.

## I.

This is an appeal from a judgment of the Circuit Court of St. Louis County entered on May 4, 1978, holding that § 476.458, RSMo 1976 Supp., requiring mandatory retirement for magistrate and probate judges at age seventy, is unconstitutional as violative of equal protection and due process. Amend. XIV, U.S.Const., Art. I, §§ 2 and 10, Mo.Const. Since this case involves

a construction of the Constitution, we have jurisdiction. Article V, § 3, Mo.Const.

The issue which we must determine is whether the mandatory retirement provisions embodied in § 476.458 relating to respondent-magistrate are constitutional. For reasons hereinafter stated, we hold that the statute is not unconstitutional and does not violate equal protection or due process and reverse the judgment of the trial court.

## II.

On January 23, 1978, respondent-Judge Jules M. O'Neil filed his petition for declaratory relief attacking the constitutionality of § 476.458. He alleged that the statute requiring him to retire at age 70 violated both equal protection and due process. In support of these allegations, he contended that (1) mandatory retirement was unreasonable, arbitrary, capricious, inequitable and oppressive and violative of the United States and Missouri Constitutions, and (2) the statute deprived him of his right to pursue his livelihood as a magistrate and of his right to sustain life. He also alleged that the statute violates his civil rights because of "age and age alone".

The action was brought against the St. Louis County Election Board and the Commission on Retirement, Removal and Discipline. After motions to dismiss filed by both defendants were overruled, a trial was held on April 27, 1978.

At trial seven witnesses testified. Mr. Thomas Wehrle, St. Louis County Counselor testified that Judge O'Neil was "very competent" to be a judge, that he is active both "physically and mentally" and that the Judge was a vigorous and vital man.

Judge O'Neil's personal physician testified that, although the Judge had diabetes, it was controlled by diet and drugs, and although the Judge had a urinary tract infection in December, 1977, when last examined in April, 1978, the Judge's condition was "satisfactory and stable". He expressed his opinion that the Judge's general health "is quite vigorous" and that he could continue his normal day-by-day activities.

Two practicing attorneys testified. Mr. Daniel V. O'Brien stated that he appeared in the Judge's court almost on a daily basis and that the Judge's physical and mental capabilities in discharging his functions as a judge were very good. The Judge worked a full day and maintained a good judicial temperament. He noted no diminution of his capabilities or his energies.

Mr. Robert Ahrens, another practicing attorney expressed the view that the Judge had an exceptionally good judicial temperament and was competent as a magistrate.

Judge O'Neil testified. He stated that he first became a magistrate in the first district in St. Louis County on September 20, 1963 and has since served continuously in that position. He was born on November 5, 1907 and reached the age of 70 on November 5, 1977. In November, 1977 and for a time thereafter he was off the bench because he had a prostate removed in November, 1977. But that he "felt good". "I feel better now then I have in the last ten years . . . ." Judge O'Neil testified that he filed his declaration of candidacy for the office of Magistrate on December 20, 1976 for the 1978 election, and paid the appropriate fee. He stated that he could discharge his duties as a magistrate for the next four years if reelected. He desired to continue to be a judge because he did not believe it was right for him to take a state pension since he felt he was capable of continuing in the position of Magistrate. " . . . I want to continue to work."

The final witness was the chief deputy clerk for the Judge. She testified concerning the great number of cases disposed of by the Judge in 1976 and 1977.

On May 4, 1978, the trial judge below filed its order and opinion. The court ruled that § 476.458 violated the equal protection and due process clauses of the Fourteenth Amendment of the United States Constitution and Art. I, §§ 2 and 10, Mo.Const. In support of its ruling, the court stated that (1) the defendants "presented no evidence to indicate any relationship between the attainment of the age of 70 and a judge's fitness to preside," (2) the respondent was

physically and mentally competent to perform the duties of a magistrate judge and (3) concluded that *Gault v. Garrison,* 569 F.2d 993 (7th Cir. 1977) supported the conclusion that the retirement provisions of the statute were unconstitutional, and was "controlling".

The trial court ordered the Election Board to permit the Judge to file and run for the office in the August primary; the court further prohibited the Commission on Retirement, Removal and Discipline from retiring or compelling the Judge to retire because of age.

### III.

On this appeal, appellant and respondent join issue—appellant contending that the statute does not violate equal protection because the statute has several rational bases and does not violate due process because it does not deprive him of a property right or of his ability to sustain life, and inferentially because no procedural safeguards are necessary before retirement. Respondent, Judge, on the other hand contends the opposite and points out that the statute (1) is violative of equal protection, (2) that the statute mandates retirement without procedural safeguards afforded those who have not attained seventy, and in doing so deprives respondent of "property" and his ability to sustain life.

The thrust of respondent's argument, as expressed at the Bar, is that (1) a classification of magistrate and probate judges at age 70 for purposes of retirement with no rational articulable state interests stated in the statute or based on evidence is unconstitutional, (2) the selection of magistrates and probate judges in § 476.458 for purposes of retirement without requiring some other judges to retire is violative of equal protection and (3) the respondent and the judges in a similar capacity are denied due process because they are not afforded the same procedural safeguards of a hearing

prior to retirement as other judges required to retire at an earlier age.

### IV.

As stated, the sole question for our determination is the constitutionality of the mandatory retirement statute relating to magistrate and probate judges (not under the non-partisan court plan) as embodied in § 476.458,[1] adopted in 1976. In passing, we note that Judge O'Neil has rendered many years of faithful and competent service to the citizens of this state, and especially to the citizens of St. Louis County. He continues to do so. We are aware that although the passage of time has added years to Judge O'Neil's age, it has not lessened his legal abilities. We recognize, as did the several witnesses at the hearing that Judge O'Neil is competent both physically and mentally, that his health is generally good, that he is very competent and that he desires to continue to serve the public.

But those factors do not control the issue. The constitutionality of legislation cannot be determined on an individual basis. The facts are that Judge O'Neil became seventy years of age on November 5, 1977, and has served more than twelve years, and will, on December 31, 1978, complete his term.

### V.

In the resolution of this issue and under the proper constitutional standard hereafter discussed, we first determine whether the General Assembly has the power to enact a law requiring magistrate and probate judges to retire and whether such legislation is permissible. We must then decide whether the statute is rationally related to the legislative purpose and legitimate state interests and whether it violates equal protection or due process. See Abramson, Compulsory Retirement, The Constitution and The Murgia Case, 42 Mo.L.Rev. 25, 39 (1977).

---

1. "Except as otherwise provided in this section, . . . magistrate judges, probate judges, and probate ex-officio magistrate judges shall retire at the age of seventy years, and may participate, if otherwise eligible, in the retirement plan established by §§ 476.515 to 476.570, except . . . ."

We first treat the question of whether the General Assembly has the power to enact a law requiring such judges to retire at a specific age. Art. V, § 1, Mo.Const. 1945, vests the judicial power of the state in various courts among which are probate courts and magistrate courts, and Art. V, § 25 of that Constitution prescribed the constitutional qualifications for the judges of those courts. Judges of the supreme and appellate courts must have been citizens of the United States for 15 years and qualified voters of Missouri for 9 years next preceding their selection; they must be at least 30 years of age and are prohibited from holding public office after the age of 75. Certain residency requirements aside, circuit judges were required to be citizens of the United States for 10 years, voters of Missouri for three years preceding their selection, and 30 years of age. Judges of probate and magistrate courts were required to be voters of Missouri and residents of the county. Probate judges had to be 25 and magistrates at least 22 years of age. All judges were required to be lawyers except for certain grandfather provisions. It is noted that that constitution did not authorize any different or additional qualifications to be brought into being by law.

These and other provisions of the judicial article of our constitution in Art. V were amended at the general election of August 4, 1970. The amendment to Art. V, § 1, was not significant, but the amendment to Art. V, § 25, was significant. Art. V, § 25, as amended 1970, continued, as before, to set forth the qualifications for the judges of the courts of this state from the supreme court to magistrate courts. The new section also provided, however, as follows:

" . . . Judges of probate and magistrate courts shall be qualified voters of this state and residents of the county *and have such other qualifications as may be provided by law.*" (Emphasis added).

The italicized portion was new in 1970. By this provision, the people authorized the legislature to adopt qualifications for magistrate and probate judges in addition to those set forth in the Constitution. This constitutional authorization is the provision which authorized the General Assembly to adopt the additional qualifications for magistrate and probate judges set forth in § 476.458 which prohibits such judges from serving as magistrate or probate judges beyond the age of 70 years and provided certain limited exceptions thereto. The age 70 retirement provision is an additional qualification provided by law as authorized by Art. V, § 25, Mo.Const., as amended 1970. It should also be noted that a newer judicial article was adopted by the people in August, 1976 which will become effective January 2, 1979. This amendment, *inter alia,* repealed § 25. The new section dealing with judge qualifications will be Art. V, § 21.

The 1970 amendment therefore recognizes a distinction between various classes of judges and sets forth various qualifications for different classes. The 1970 Amendment clearly authorized the General Assembly to set "other qualifications" for magistrate and probate judges.

■ We conclude that under the 1970 Amendment to Art. V, the General Assembly has the power to adopt § 476.458 and that such legislation is constitutionally permissible even though it provides for different qualifications for different classes of judges.

## VI.

We turn to the issue of whether the statute is violative of equal protection or due process.

In recent years, compulsory retirement systems have come under constitutional attack. Equal protection and due process challenges have been made in a great number of decisions and in a great variety of contexts.

In *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976), the Supreme Court of the United States upheld a Massachusetts compulsory retirement statute relating to a state police officer, which required state police officers to retire at age 50. The

Court held (1) that the proper standard of judicial review of the equal protection claim was not "strict scrutiny"[2] but the traditional rational basis test wherein classifications are constitutional if they bear a rational relationship to a permissible state interest. *Dandridge v. Williams,* 397 U.S. 471, 485–486, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); and (2) that the compulsory retirement provision involved satisfied the rational basis standard.[3]

■ The standard which we must utilize in the instant case is therefore the rational basis test. Under this standard, the great number of authorities which have examined a compulsory retirement statute in the various professions, have all, save one, upheld the validity of such compulsory retirement statutes. The sole exception is, in some respects, *Gault v. Garrison, supra.*

In *Gault,* plaintiff, Julia Gault, on behalf of herself and others filed suit challenging the constitutionality of governmental mandatory retirement requirements relating to teachers, as violative of both equal protection (by discriminating against her on the basis of age—65) and due process (by creating an irrebuttable presumption and by terminating public employment arbitrarily). The Court of Appeals, Seventh Circuit reversed the sustaining of a motion to dismiss her petition and remanded the cause for further proceedings. The Court distinguished *Murgia* and held that (1) the classification of a public school teacher based on mandatory retirement at age 65 was violative of equal protection without an evidentiary showing that it rationally furthered some articulable state purpose, and (2) absent a showing of a rational state purpose the granting of procedural safeguards to teachers under age 65 prior to termination and a denial of such procedural safeguards to those over 65 was a denial of equal protection. Of course, we are not compelled to follow, nor are we bound by that decision. *Kraus v. Board of Education of City of Jennings,* 492 S.W.2d 783, 784–785 (Mo.1973).

But in the most recent decision which we have found, *Palmer v. Ticcione,* 576 F.2d 459 (2nd Cir. 1978), [1978] 16 Empl.Prac.Dec. (CCH) ¶ 8314, the Second Circuit Court of Appeals refused to follow *Gault.* In *Palmer,* a teacher, as in *Gault,* appealed from an order of the District Court dismissing plaintiff's allegation of age discrimination in violation of equal protection and due process. Unlike *Gault* she was required to retire at age 70. It was not disputed that she was willing and able to teach. She contended, as the respondent does here, that retirement solely on the basis of age violates her constitutional rights, and that she is entitled to a hearing and procedural safeguards before retirement.

The Second Circuit affirmed the dismissal of her claim. The court declined to follow *Gault* for two reasons. First, the court, while recognizing there was evidence in the record to support the conclusion in *Murgia,* but absent in *Gault,* relied upon numerous prior decisions which have sustained compulsory retirement statutes in various contexts which involve primarily mental skills.[4] Second, the court held that *Gault,* "too narrowly" conceived the possible rational basis for a compulsory retirement statute. Unrelated to any notion of physical or mental fitness, a state might prescribe mandatory retirement for teachers in order to open up employment opportunities for young teach-

---

**2.** *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). This more rigid test is applied when reviewing state-created classifications which interfere with a fundamental right or operates to the peculiar disadvantage of a suspect class. *Murgia,* 96 S.Ct. at 2566.

**3.** In applying this standard the Court noted that it employs a relatively relaxed standard reflecting an awareness that the drawing of lines is peculiarly a legislative task. Perfection is not necessary or possible. *Murgia,* 96 S.Ct. at 2567, citing *Dandridge v. Williams.*

**4.** *Johnson v. Lefkowitz,* 566 F.2d 866 (2nd Cir. 1977)—civil servants to retire at 70; *Rubino v. Ghezzi,* 512 F.2d 431 (2nd Cir. 1975), *cert.* denied, 423 U.S. 891, 96 S.Ct. 187, 46 L.Ed.2d 122 (1975)—mandatory retirement of state judges at 70, *Weisbrod v. Lynn,* 383 F.Supp. 933 (D.D. C.1974) aff'd. 420 U.S. 940, 95 S.Ct. 1319, 43 L.Ed.2d 420 (1975)—federal civil servants.

ers or to open up more places for minorities, or to assure predictability and ease in establishing and administering pension plans. "A compulsory retirement system is rationally related to the fulfillment of any or all of these legitimate state objectives." *Palmer,* 576 F.2d at 462. Thus the Second Circuit held that the compulsory retirement law is immune from the constitutional attacks of equal protection and due process.

The rationale of *Palmer* and the result thereof are also found in the numerous decisions throughout the country [5] —all upholding the constitutionality of compulsory retirement laws when challenged on equal protection or due process grounds. Every case, save *Gault,* which has considered the issues has upheld mandatory retirement statutes.

Mandatory retirement provisions are recognized by private industry, by state governments and by the federal system under recent legislative amendments. Mandatory retirement systems perform beneficial societal functions. The justification most commonly offered for mandatory retirement schemes is that there is a reasonable connection between increased age and declining job capabilities so that mandatory retirement is a convenient method of insuring an effective and productive work force. See Abramson, supra, 42 Mo.L.Rev. at 44.

■ Under the numerous judicial precedents, and because there are rational bases for the statute, we hold that § 476.458 is not violative of equal protection or due process because (1) compulsory retirement statutes for various public occupations, including judges, have been upheld as consti-

tutionally permissible and (2) section 476.-458 is rationally related to the furtherance of legitimate state interests. Several rational bases related to the furtherance of a legitimate state interest are implied in the statute and are clearly recognizable.

First, § 476.458, "marks a stage" in life at which judges must end their regular, daily judicial duties. Judges serve in a sensitive position. Judges' decisions affect many aspects of peoples' lives and property. Judges must be able to adapt to changes in the law and in society. Judges are held to the highest possible standards. See Code of Judicial Conduct, Rule 2.

Our citizens are entitled to a judicial system of the highest caliber and to judges with the highest possible mental and physical qualifications. Mandatory judicial retirement is an attempt by the General Assembly to insure the fitness of the judiciary as a whole and to insure the continued competency of the system. The General Assembly in adopting the statute dealt in probabilities. That is all humans can do. There are certain ages in life, learned from experience, at which there is a lessening in mental, physical abilities. If mandatory retirement is invalid at age 70, then at what age—80, 90, or 100? To paraphrase Holmes,—in life, one must make choices. That is what the General Assembly did. The statute draws a line at a certain age which attempts to uphold the high competency for judicial posts and which fulfills a societal demand for the highest caliber of judges in the system. *Cf. Aronstam v. Cashman,* 325 A.2d 364. The statute is an attempt to insure that, on the whole, only

---

5. In addition to *Johnson v. Lefkowitz, supra, Rubino v. Ghezzi, supra* and *Weisbrod v. Lynn, supra,* see also *Aronstam v. Cashman,* 132 Vt. 538, 325 A.2d 361 (1974)—mandatory retirement age of 70 for assistant state judges constitutional because it promoted legitimate state interest of imposing highest possible standards for judiciary; *Nelson v. Miller,* 25 Utah 277, 480 P.2d 467 (1971)—statute providing for mandatory retirement of district judges at age 70 and Supreme Court justices at age 72 constitutional; *Boughton v. Price,* 70 Idaho 243, 215 P.2d 286 (1950)—statute requiring judges to retire at 70 not unconstitutional; *Townsend v.*

*County of Los Angeles,* 49 Cal.App.3d 263, 122 Cal.Rptr. 500 (1975)—county public defender required to retire at age 65, not denied equal protection and collecting many decisions; *Armstrong v. Howell,* 371 F.Supp. 48 (D.Neb.1974) —hospital employee retire at 65; *McIlvaine v. Pennsylvania,* 415 U.S. 986, 94 S.Ct. 1583, 39 L.Ed.2d 884 (1974) see *infra.*

It is to be noted that Congress recently considered the issue of compulsory retirement and has amended the Age Discrimination in Employment Act of 1967. P.L. No. 95–256, 92 Stat. 189—requiring retirement, with certain exceptions, at age 70.

those judges who have the vigor, health and vitality will carry out the public's work in administering justice. The function of mandatory retirement is to permit the withdrawal from the bench that group of judges in which disabilities related to aging are most likely to occur. Braithwaite, Removal and Retirement of Judges in Missouri: A Field Study, 1968 Wash.U.L.Q. 378, 397.

Second, the statute which is presumptively valid draws a legitimate line to avoid the tedious and often perplexing decisions to determine which judges after a certain age are physically and mentally qualified and those who are not. A mandatory provision avoids these traumatic and often lengthy hearings.

Third, mandatory retirement increases the opportunity for qualified persons—men and women alike—to share in the judiciary and permits an orderly attrition through retirement. See *Townsend v. County of Los Angeles,* 122 Cal.Rptr. at 503.

Such a provision not only achieves the maximum in qualified judicial personnel, but equally important widens the opportunities for qualified younger members of the Bar to seek a judicial post. Rephrasing *Palmer v. Ticcione,* a state might prescribe a mandatory retirement for judges in order to "open up" judicial opportunities for younger lawyers and to bring young persons with fresh ideas and techniques into the system.

Fourth, such a mandatory provision also assures predictability and ease in establishing and administering judge's pension plans.[6] The General Assembly, having the constitutional power to do so, has established a comprehensive retirement plan for judges based on retirement at age 70.[7] As a corollary, the General Assembly must be able to plan and determine the amount of appropriations necessary to fulfill the statutory benefits provided for the retirement of judges. That is solely the function of the General Assembly.

We remember the difficulties that arose from the absence of a mandatory retirement age for judges. We also recall that there were no provisions for survivors benefits. Judges were, of necessity, forced to serve beyond the years of their physical and mental abilities. The judiciary, as well as others, pointed out these deficiencies to the General Assembly and they were corrected.

Furthermore, we know that age seventy is an age—a time of life—which is recognized by society as being "about" the time when the physical and mental processes weaken among many men and women. That recognition is embodied in statutes, in private retirement systems and in the policy of the Congress. All of this, and more, is embodied in the policy of § 476.458.

In sum, we conclude that compulsory retirement of magistrate and probate judges at age seventy embodied in the statute is rationally related to the fulfillment of several legitimate state objectives and hence the statute does not violate equal protection.

In our view *Gault* is not, as the trial court held, controlling under the circumstances.

As to the due process argument of respondent, he contends, as we understand it, that there is a presumption that at age seventy, a judge is no longer capable to act as a judge on a daily, full-time basis and that he is not entitled to the same procedural safeguards other judges who have not reached seventy are afforded before they may be required to retire.

■ The due process argument is similar to the equal protection one; the two are closely intertwined. If mandatory retirement is constitutionally permissible and is not a violation of equal protection then

---

6. The pension plan is one-half of compensation. Section 476.530. The compensation of a magistrate in St. Louis County is $33,000 per annum. Section 482.150, RSMo 1977 Supp.

7. The fact that the statute does not apply to the entire judiciary does not make the statute violative of equal protection. See *Nelson v. Miller,* 480 P.2d at 476—Supreme Court Judges retire at 72 and district judges at 70, and see discussion, supra, relative to the permissible power of the General Assembly.

respondent is not deprived of any due process rights. As stated in *Palmer,* if the statute is sustainable because it is rationally related to a legitimate state purpose, the statute is not vulnerable because it requires retirement based upon a presumption and does not provide for procedural safeguards before retirement.

"... If the statutory classification is sustainable as rationally based, then it should not fall because it might also be labeled a presumption. Moreover the due process claim was before the court in *McIlvaine v. Pennsylvania,* ... and *Weisbrod v. Lynn,* ... and this court in *Rubino v. Ghezzi,* ... In each case it was rejected." *Palmer v. Ticcione,* 576 F.2d at 463.

The due process claim has been before the courts previously and in each case was rejected.[8]

 Nor does the statute deprive the respondent judge of "property" or his ability to "sustain life." A judge does not have a vested interest in public office, nor is the office fundamental property within the meaning of the Constitution. Public officers are created solely to meet the needs of the public and the incumbent has no contractual or vested right to the office. *State ex rel. Hall v. Vaughn,* 483 S.W.2d 396, 397 (Mo. banc 1972). Decisions of the Supreme Court of the United States conclude there is no right of governmental employment *per se. Murgia,* 427 U.S. at 313, 96 S.Ct. 2562. There is no constitutional right to be a judge.

It can hardly be said that the statute deprives the respondent of his ability to "sustain life". This argument is without merit in view of other provisions of law relating to retirement compensation which is sufficient to provide the necessities of life.

## VII.

Under all these circumstances, the authorities heretofore relied upon and based upon legitimate state objectives, we hold that § 476.458 is not violative of the equal protection or due process clauses of the Federal or Missouri Constitutions and hence is constitutional.

In reaching this conclusion we are aware of the substantial contributions that our elderly citizens make to society and "we do not make light of the substantial economic and psychological effects . . . compulsory retirement can have on an individual . . . ." *Murgia,* 96 S.Ct. at 2568. Retirement can well be a time of life of many useful pursuits. In short "age is not a cage" but a time of life when many new things can be accomplished. But in determining the provisions for mandatory retirement embodied in § 476.458, the General Assembly has weighed these personal considerations against the social goals which compulsory retirement furthers. In this instance we will not intrude into the legislative prerogative and strike down a legislative choice. See *Nelson v. Miller,* 480 P.2d at 472.

We accordingly reverse the judgment of the trial court.

The judgment is reversed.

All concur.

---

8. *McIlvaine v. Pennsylvania,* 415 U.S. 986, 94 S.Ct. 1583, 39 L.Ed.2d 884 (1974) dismissing for want of substantial federal question, *McIlvaine v. Pennsylvania State Police,* 454 Pa. 129, 309 A.2d 801 (1973) aff'g. *McIlvanie (sic) v. Pennsylvania State Police,* 6 Pa.Cmwlth. 505, 296 A.2d 630 (1972) holding retirement system valid as against due process claim; *Weisbrod v. Lynn, supra,* holding that Federal Employee Mandatory Retirement Law does not violate due process. See Discussion in *Weisbrod,* 383 F.Supp. at 936–937; see also comments of Pell, J., dissenting in *Gault,* 569 F.2d at 1000—". . . no merit in this attack."