**Jing Li CHEN, Respondent,**

v.

**Xiao Chuan LI, Appellant.**

No. 73247.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 2, 1999.

Rosenblum, Goldenhersh, Silverstein & Zafft, P.C., Sanford J. Boxerman, Clayton, for appellant.

Frank Susman, Susman, Schermer, Rimmel & Shifrin, L.L.C., Clayton, for respondent.

Before HOFF, P.J., GARY M. GAERTNER, and RHODES RUSSELL, JJ.

GARY M. GAERTNER, Judge.

Appellant, Xiao Chuan Li ("husband"), appeals the judgment of the Circuit Court of St. Louis County, dissolving his marriage to respondent, Jing Li Chen ("wife"). Husband appeals those portions of the divorce decree regarding the division of marital property, maintenance and child support. Husband also attacks the trial court's denial of his motion for continuance. We reverse and remand for further proceedings.

Husband and wife were married in Shanghai, China on September 1, 1977. Their only child, Chen Li ("son"), was born on April 21, 1978. In 1984, husband left China for the United States. In 1991, wife and son left China to live with husband in the United States. At the time of this trial, son was beginning his second year of school at the University of Illinois in Champaign.

Around April 7, 1997, husband and wife separated. On April 8, 1997, wife filed her petition for dissolution of marriage. That same day, wife filed her statement of property and statement of income and expenses

with the trial court. Also on April 8, 1997, wife filed a sworn affidavit, in a motion pendente lite, stating husband was the owner of and employed by Stream Enterprises, Inc. in the United States; Stream Enterprises, Inc. in China; Shanghai Full Shine Paper Co., Ltd. in the United States; Shanghai Full Shine Paper Co., Ltd. in Shanghai, China; and Shanghai Full Shine Paper Co., Ltd. in Beijing, China.

On June 5, 1997, husband filed his answer to the petition. However, husband failed to file his court-required income and expense and financial statements. On August 12, 1997, wife filed a motion to compel and for sanctions, based upon husband's failure to respond to interrogatories and requests for document production. On August 28, 1997, the hearing on the motion was held before the trial. At the hearing, husband's counsel explained husband had been in China since shortly after the filing of the dissolution action, attempting to revive his business interests. Husband's counsel asserted that, as a result, communications between husband and him were difficult, if not, impossible, and thus, husband was unable to receive and respond to discovery requests. The trial court granted wife's motion and ordered husband's pleadings stricken.

Also, at trial, husband's counsel filed a motion for a continuance, noting husband's unavailability to meet with his counsel and prepare for trial and that the case was only filed four months earlier. In response, wife's counsel argued the parties had been there for trial twice, in addition to a pretrial conference, and each time husband's counsel had offered the same excuse concerning husband's unavailability. Wife's counsel questioned how husband's unavailability would change if the continuance were granted. The trial court denied husband's motion.

At trial, when the trial court told wife's counsel to call her first witness, she stated wife "would like to file a first amended statement of property."[1] After the trial court responded, "Okay.", wife's counsel proceeded to call her first witness. In her first amended statement of property, wife listed all the property she was able to locate on her own. Wife alleged in her first amended statement of property that husband has a property interest in numerous companies, which she listed by name. Wife also alleged in her first amended statement of property that husband holds accounts with Magna Bank, First Bank, Mercantile Bank, Roosevelt Bank, Jefferson Bank, the Bank of China and the Hong Kong and/or Shanghai Bank, Incorporated. This document further indicated husband owns three cars: a 1990 Dodge, a 1995 Toyota Corolla, and a 1994 Dodge station wagon.

At trial, wife called two witnesses, Robert Minkler, Jr., a certified public accountant, and herself. Husband neither presented any evidence nor attended the trial. While husband failed to appear personally for any of the trial dates, husband was represented at trial by his counsel.

Minkler's testimony, which was based upon his review of certain tax returns provided to him by wife's counsel, concerned three companies[2] which husband apparently had a property interest in, as well as the finances and business dealings of those companies. Additionally, Minkler reviewed the personal income tax returns of husband and wife for the years 1991 through 1996. Based on these returns, he stated that, in 1996, husband's gross wages were $45,812.00 and wife's gross wages were approximately $5,000.00.

Wife took the stand next. While on the stand, wife's counsel handed her a copy of

1. In her respondent's brief, when referring to her first amended statement of property, wife cites to the Legal File pages 78 – 90. These same pages of the Legal File also correspond to Petitioner's (Wife's) Exhibit 1, titled "Exhibit 1 to Judgment of August 28, 1997", which is attached to the trial court's "Family Court Judgment and Decree" and incorporated into and made a part of the decree. However, as further explained below, husband points out that a review of the transcript shows that wife's Exhibit 1 was never offered or received into evidence. For the sake of simplicity, we will refer to this document as the context calls for it.

2. The companies Minkler's testimony concerned were Stream Enterprises, Inc., Super Tech, and Innovate, Inc. These companies are among those listed in wife's first amended statement of property. See note 1, supra.

her statement of income and expenses which she had filed on the same day as her petition and wife testified that statement accurately reflected her income and expenses. Wife, however, did not testify as to any of the figures set forth on the statement, nor was the statement offered or received into evidence.

Wife testified she works for the St. Louis County Library repairing books, earning six dollars per hour. Her education was obtained in China and progressed to the high school level. While still in China, wife was weakened by three surgeries. When she was not ill, wife worked in a sewing machine factory in China while raising their son for seven years. At that time, wife and son were primarily supported by wife's parents. Shortly after wife and son arrived in the United States, husband introduced wife to his girlfriend, B.F. Dong, who was an employee of Stream Enterprises, Inc. and lived in St. Louis. In 1993, when the parties decided to buy a house, husband asked wife if his girlfriend could live with them in the family home. At the time of trial, the mortgage payments on the house were approximately $1,400.00 per month. Wife explained that prior to these divorce proceedings, husband would spend half the year in China and half the year in the United States.

Wife also testified she and husband had a joint account at Roosevelt Bank, from which she could write checks for food and clothes and bills, but that after August of 1996, husband did not want to give her the money for that account. Wife further testified husband owned Stream Enterprises and "some company, Dalian[3], in Shanghai." Wife stated husband mentally abused her, hit her twice, abused son, and stopped giving wife money.

Wife also testified as to certain items of marital property. She explained she and husband had purchased the home in Chesterfield in 1993. On cross-examination, wife said husband made a down payment of $72,000.00 when they purchased this house. She further indicated on cross-examination that the furniture in the home had cost more than $10,000.00. Wife also stated husband owns a 1990 Dodge automobile, which she drives, and a 1995 Toyota Corolla. Wife also indicated husband and Stream Enterprises, Inc. owned a 1994 Dodge. Wife went on to explain that before their separation, husband drove a BMW owned by Stream Enterprises, Inc.

In the course of wife's testimony, she stated she found at the family home a number of documents concerning bank accounts. She began to testify as to a statement of account at Roosevelt Bank and a statement of an individual retirement account at Jefferson Bank. At that point, the trial court and counsel held a discussion concerning these documents. Husband's counsel stated he would object to admission of these documents because they were not current. The trial court then informed wife's counsel, "Well, you know, you've got to do it differently than the way you're doing it. So, I mean, I don't know how to tell you to do it, but—I mean, you just can't like ask her if she found some papers and then expect that to prove up—". Wife's counsel responded, "Well, Judge, what I think I can do is I can submit my statement of property as to our allegations about the marital property. And I don't know that I need to go beyond that." Then, after the trial court explained to wife's counsel that husband's counsel is objecting to the admission of these documents, wife's counsel stated "Well, I haven't offered them." The trial court indicated that if wife's counsel offered the bank statements into evidence and husband's counsel objected, the court would sustain the objection.

Wife's counsel then requested a short recess, after which wife testified that on the day of trial, she and her counsel prepared a first amended statement of property, listing all of the properties she was able to locate on her own and providing the value when she knew it. However, as husband points out, wife did not read from the statement or offer it into evidence.

---

**3.** Several of the companies listed in wife's first amended statement of property had "Dalian" in their names. *See* note 1, supra.

Furthermore, on cross-examination, wife conceded that as to those bank accounts which she listed, she was not aware what, if anything, the accounts presently contained. She did identify one account at Magna Bank, which is for her, with approximately "$500, maybe", as well as an account at First Bank which she said belonged to son. As to Mercantile Bank, Roosevelt Bank, Jefferson Bank, the Bank of China and Shanghai Bank Incorporation, wife was unable to say whether any accounts which she and/or husband have had at those institutions were open or closed.

Wife also testified about two suitcases full of American one hundred-dollar bills which husband brought to the marital home, one of which she witnessed in early 1997.

At the end of the trial, the trial court instructed counsel to prepare an order. The same day, the trial court entered the order which wife's counsel had prepared.[4] The trial court dissolved the parties' marriage and awarded custody of son to wife. The decree ordered, inter alia, husband to pay wife's attorney's fees of $10,000.00, modifiable maintenance of $800.00 per month, and child support of $526.00 per month. The judgment also ordered husband to pay all of son's college expenses, not to exceed the cost of attending the University of Illinois at Champaign, to maintain medical insurance on son and to pay one-half of all non-insured medical costs.

The judgment also divided the marital property in the following manner: wife was awarded the marital home, the 1995 Toyota Corolla, the 1990 Dodge, the 1994 Dodge Station Wagon, wife's account at Magna Bank, and all household and personal property contained in the marital home. Husband was awarded all stock in Stream Enterprises, Inc. and all assets owned by Stream Enterprises, Inc. The following property was awarded on the basis of two-thirds to wife and one-third to husband: all bank accounts, deposits, IRA accounts, Certificate of Deposits or other assets held at a bank or savings and loan or other depository institution in the name of wife and/or husband; two invest-

ment accounts held in the name of husband; all shares of stock of several corporations, owned by husband, and all assets of said corporations; capital investments of husband in several corporations and any income or dividends earned thereon; all import/export contracts or agreements entered into by husband and the income earned therefrom; frequent flyer miles in the name of husband; and any and all outstanding airline tickets issued to Stream Enterprises, Inc. and/or husband. Husband appeals.

■ Appellate courts will affirm the judgment of the trial court if it is supported by substantial evidence, it is not against the weight of the evidence, it does not erroneously declare the law, or it does not erroneously apply the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo.banc 1976); *Calcaterra v. Calcaterra,* 939 S.W.2d 61, 62 (Mo.App. E.D. 1997). "All evidence and permissible inferences therefrom are considered in the light most favorable to the trial court's decision, and all contrary evidence and inferences are disregarded." *In re Marriage of Gilmore,* 943 S.W.2d 866, 871 (Mo.App. S.D.1997).

Husband raises four points on appeal. However, we find only three of them require discussion. In his first point, husband asserts the trial court erred in its division of marital property because said division was not supported by substantial evidence in that the record contained no evidence from which the values of most, if not all, of the assets could be determined and the record also failed to demonstrate that most of the assets divided by the trial court even existed. We agree.

■ As to his first point, husband argues in his opening brief that the lack of evidence in the record as to the existence and value of most of the assets set forth in the trial court's judgment and decree require us to reverse the judgment with regard to the division of property. In his reply brief, husband repeats his contentions from his opening brief, but further argues that wife's exhibit number one[5] was never offered or received into evidence. Generally, "[a]ssign-

---

4. *See* note 1, supra.

5. *See* note 1, supra.

ments of error set forth for the first time in the reply brief do not present issues for appellate review...." *Application of Gilbert,* 563 S.W.2d 768, 771 (Mo.banc 1978). In *Gilbert,* the appellant raised an issue for the first time in his reply brief. *Id.* The Missouri Supreme Court explained that as that case was to be remanded for further proceedings and the issue may well be raised before the trial court, the Court would "depart from the usual practice and state [its] present view." *Id.* Similarly, as this case is to be remanded for further proceedings, and as husband may well raise this issue before the trial court, we will follow the lead of the Missouri Supreme Court in departing from the usual practice and state our view on this issue.

In *Hopkins v. Hopkins,* 664 S.W.2d 273 (Mo.App. E.D.1984), wife sought to prove there was sufficient evidence to support the trial court's award of child support. *Id.* at 274. The wife argued husband's ability to pay the child support award can be inferred from a prior pendente lite award and from the filing of husband's income and expense statement at a hearing on a post-trial motion. *Id.* The *Hopkins* court found this argument must fail because there was not any evidence showing the trial court took into account the prior pendente lite award and, more significantly for our purposes, the "income and expense statement of [husband] was not received into evidence but was simply filed with the court." *Id.* The court further stated the "mere filing of a document does not put it before the court as evidence." *Id.*

■ In our case, wife filed her statement of property on the same day she filed her petition for dissolution of marriage. Additionally, at trial, when the trial court told wife's counsel to call her first witness, she stated wife "would like to file a first amended statement of property."[6] After the trial court responded, "Okay.", wife's counsel proceeded to call her first witness. Later in the trial, there was a discussion between the court and the parties' counsel concerning certain bank account documents which wife sought to testify to, but which husband's counsel objected to for lack of foundation as

to whether the documents were current. Shortly thereafter, wife's counsel admitted on the record "... [she had not] offered them." Wife then testified that on the day of trial, she and her counsel prepared a first amended statement of property, listing all of the properties she was able to locate on her own and providing the value when she knew it. However, wife did not read from the statement or offer it into evidence.

We find our case analogous to *Hopkins* for the following reasons. In *Hopkins,* the husband filed his statement of income and expenses at a hearing on his post-trial motion. Similarly, in our case, wife filed her statement of property on the day she filed her petition and she filed her first amended statement of property at the trial. In *Hopkins,* the statement of income and expenses was not received into evidence, but rather was only filed with the court. Similarly, in our case, wife's statement of property and first amended statement of property were not received into evidence, but rather were only filed with the court. Therefore, as the *Hopkins* court found the "mere filing of a document does not put it before the court as evidence[,]" so also are we compelled to find neither wife's statement of property nor her first amended statement of property was before the court as evidence.

In reaching this conclusion, we are aware the *Hopkins* court went on to state the record does not show the trial court ever considered husband's statement of income and expenses. This fact somewhat distinguishes *Hopkins* from our case, in which there is evidence that the trial court considered wife's first amended statement of property, in that it was attached to and incorporated into the trial court's judgment. However, we further note, as husband points out, for much of the property disposed of in the trial court's judgment, the only evidence of such property is the judgment itself, with no other mention or evidence in the record to support it. Without such other support, and in light of the *Hopkins* court's findings, we believe the trial court's judgment was not supported by substantial evidence.

---

**6.** *See* note 1, supra.

■ Moreover, in arriving at our conclusion, we find ourselves in the same position as the *Hopkins* court in that "[o]ur holding is compelled by statute and case law despite the fact that [husband's] failure to comply with the rules of discovery was, in part, the reason for the evidentiary deficiency." [7] *Hopkins,* 664 S.W.2d at 274.

In response to husband's assertions, wife contends the record contains ample evidence as to the value and existence of the marital assets at issue. Wife relies on *Tudor v. Tudor,* 617 S.W.2d 610, 614 (Mo.App. S.D. 1981) and *State v. Hurst,* 845 S.W.2d 669, 670 (Mo.App. E.D.1993) here, contending the trial court may have taken judicial notice of her statement of property, which she filed on April 8, 1997, and her first amended statement of property, which she filed with the trial court at trial immediately prior to calling her first witness. However, we neither see in the record where the trial court did take judicial notice of these documents, nor do we believe these cases are applicable under our facts.

Furthermore, wife argues the case of *Hayes v. Hayes,* 677 S.W.2d 933 (Mo.App. S.D.1984),[8] applies to husband and he should not be heard to say he was prejudiced by the absence of specific evidence in the record after having failed to cooperate or to provide any evidence whatsoever in these proceedings. While we are aware of *Hayes,* we believe it does not abrogate the requirement of having sufficient evidence to support the trial court's judgment. Furthermore, we find *Hayes* to be distinguishable in that the record before the *Hayes* court proved the existence of the assets divided by the trial court's judgment. As set forth above, we believe our record sufficiently demonstrates neither the existence of many of the assets divided by the trial court's judgment, nor a basis for determining the value of most of those assets.

■ Despite our finding there is insufficient evidence to support the trial court's judgment, we believe wife may be able to provide sufficient evidence to the trial court on remand. "[W]here a plaintiff has by mistake or inadvertence failed to prove up a claim in a situation where the proof seems to have been available, we have no alternative but to reverse the judgment and remand the case for reception of additional evidence." *Union Sav. Bank v. Cassing,* 691 S.W.2d 513, 515–16 (Mo.App. W.D.1985). In this case, judging from the extensive list of assets and properties wife listed in her first amended statement of property, it appears to us wife has some sort of proof as to these assets and properties. Therefore, based on *Cassing,* we have no alternative but to reverse the trial court's judgment and remand for the reception of additional evidence.

Additionally, within his first point, husband argues that assets owned by an entity not a party to the divorce proceedings, such as the corporations listed in the divorce decree, are not subject to division. We agree.

■ "A marital dissolution decree may not purport to affect property of a corporation that is not a party to the litigation, even if the corporate stock is primarily or entirely owned by one of the parties to the dissolution action." *In re Marriage of Ward,* 659 S.W.2d 605, 607 (Mo.App. S.D.1983). "The trial court [is] limited to a disposition of the *stock* of the corporation which [is] admitted by both parties to be marital property." *Id.* (Emphasis in original.) "The trial court has no jurisdiction to enter a decree dividing property that is not owned by either spouse." *Id.*

■ In our case, the trial court's decree purported to divide and dispose of not only the stock of the listed corporations, but also the assets of those corporations as well. As the *Ward* court states, however, the trial court is without jurisdiction to enter a decree

---

7. In *Hopkins,* the trial court's judgment was the result of the imposition of sanctions against husband, pursuant to Rule 61.01(d). *Hopkins,* 664 S.W.2d at 273.

8. *Hayes* involved a divorce case where the husband failed to appear for scheduled depositions. *Hayes,* 677 S.W.2d at 934. As a sanction for this

failure, the trial court struck husband's answer. *Id.* Wife relies on *Hayes* throughout her brief for its statement, "[a]fter having failed to provide his testimony, the husband will not now be heard to say he was prejudiced by the absence of specific evidence of such value." *Id.* at 935.

which divides and disposes of property that does not belong to either husband or wife, but rather to a separate corporation. Moreover, *Ward* demonstrates the trial court only had authority to divide and dispose of the *stock* of the listed corporations, not their assets. In response to husband's reliance on *Ward,* wife points out that the *Ward* court went on to say "there may be times when a party to a marriage has treated a controlled corporation with such informality and disregard of the distinction of entities that a corporate structure is meant to provide that the corporate existence may be ignored...." *Id.* at 608. However, we do not find the record supports such a conclusion in this case. Therefore, we find the trial court exceeded its jurisdiction in dividing and disposing of the assets of these corporations in its judgment.

In his second point, husband argues the trial court erred in ordering husband to pay maintenance because said order was not supported by substantial evidence in that the record contained no evidence concerning wife's reasonable needs and insufficient evidence as to wife's ability to meet her needs without maintenance. We agree.

 "The trial court is vested with considerable discretion in granting maintenance orders." *Halupa v. Halupa,* 943 S.W.2d 272, 277 (Mo.App. E.D.1997). This Court reviews maintenance orders for an abuse of discretion only. *Id.* Moreover, we will only interfere with the trial court's maintenance order if the amount of maintenance is clearly unwarranted or is wholly beyond the resources of the spouse ordered to pay. *Id.*

 RSMo section 452.335.1 (1994) provides that a spouse desiring maintenance must satisfy a two-prong test: the spouse must demonstrate s/he "1) [l]acks sufficient property, including marital property apportioned to him [or her], to provide for his [or her] reasonable needs; and 2)[i]s unable to support himself [or herself] through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home." *Halupa,* 943 S.W.2d at 277. Under

the aforementioned statute, a spouse must demonstrate need before a court can order maintenance. *Id.* Furthermore, a maintenance award must be "made within a reasonable tolerance of proof." *Id.* (quoting *Chapman v. Chapman,* 871 S.W.2d 123, 126 (Mo. App. E.D.1994)). Therefore, a maintenance award cannot be affirmed without evidence to sustain it. *Id.*

The *Halupa* court, faced with a similar set of circumstances, stated "wife's income and expense statement was not offered nor received into evidence, and was, therefore, not properly before the trial court." *Id.* at 276. Further, the *Halupa* court explained, "[a]lthough wife's income and expense statement was filed with her petition, it was not introduced into evidence.... [T]he filing of a statement of income and expenses does not put it before the court as evidence." *Id.* at 277; *see also Chapman,* 871 S.W.2d at 126; *Hopkins v. Hopkins,* 664 S.W.2d 273, 274 (Mo.App. E.D.1984). We find our case analogous to *Halupa.*

 In our case, husband argues wife failed to make the required showing. Wife testified she works at the St. Louis County Public Library repairing books, for which she earns six dollars per hour. However, the record here contains little other evidence with regard to wife's reasonable needs. Wife filed her statement of income and expenses on the day she filed her petition. At trial, wife's counsel handed her a copy of her statement of income and expenses and she testified that statement accurately reflected her income and expenses. Wife, however, did not testify as to any of the figures set forth on the statement, nor was the statement offered or received into evidence. Furthermore, in her brief, wife argues that while her statement of income and expenses was not admitted into evidence at trial, it was filed with the court on April 7, 1997(sic) and referred to at trial. Again, wife argues the trial court may have taken judicial notice of this document and the other documents she filed. For the reasons stated above, we are not persuaded by this argument. Also, as indicated above, we believe there was insufficient evidence concerning the marital proper-

ty awarded to the parties, which is a factor in determining maintenance awards. *See* RSMo section 452.335.1 (1994).

Therefore, based on the small amount of evidence wife produced at trial, we believe wife did not demonstrate that she is entitled to the award of maintenance. Accordingly, we reverse the maintenance award and remand for reconsideration. *See Halupa*, 943 S.W.2d at 277; *Union Sav. Bank v. Cassing*, 691 S.W.2d 513, 515–16 (Mo.App. W.D.1985).

In his third point, husband asserts the trial court abused its discretion in ordering him to pay child support of $526.00 per month, maintenance of $800.00 per month,[9] and all of son's college expenses in that these amounts were excessive in light of the evidence in the record concerning husband's income. We agree.

In *Hauser v. Hauser*, 625 S.W.2d 924 (Mo. App. E.D.1981), this court reversed the trial court's award of marital property. *Id.* at 925–26. The appellant in *Hauser* also challenged the trial court's award of maintenance to respondent. *Id.* at 926. The *Hauser* court found that, considering its reversal of the trial court's determination of marital property, the maintenance award also is reversed. *Id.* In so concluding, the court noted that a factor in deciding maintenance awards is the assets of each party, "including the marital property apportioned to the party seeking maintenance." *Id.* The *Hauser* court further reasoned "[b]ecause the amount of marital property is far less than the trial court first determined, the trial court's maintenance determination will in all likelihood be affected." *Id.*

 We believe our case is analogous to *Hauser* in this respect. In our case, we have already reversed and remanded on the issues of the trial court's determination of marital property and its award of maintenance. Further, we note, like an award of maintenance, a factor in determining an award of child support is the financial resources of the parties. RSMo section 452.340.1 (Cum.Supp. 1997). *Cf.* RSMo section 452.335.2 (1994).

9. We note the trial court's award of maintenance was already disposed of in our analysis of hus-

Because the trial court's determinations as to marital property and maintenance may well be affected on remand, so also may its determinations as to child support and son's college expenses. Therefore, we reverse and remand for reconsideration the trial court's determination as to child support and son's college expenses.

We have reviewed husband's point on appeal regarding the trial court's denial of his motion for a continuance and find no jurisprudential purpose would be served by an extended discussion. We affirm this point pursuant to Rule 84.16(b).

Based on the foregoing, we reverse the judgment and remand the case for further proceedings consistent with this opinion.

HOFF, P.J., and RHODES RUSSELL, J., concur.

band's second point, supra.