Raymond J. KUHAR

v.

GREENSBURG–SALEM SCHOOL DISTRICT and Robert L. Dovey, Superintendent.

Appeal of Greensburg-Salem School District.

No. 79–1698.

United States Court of Appeals, Third Circuit.

Argued Dec. 13, 1979.

Decided Feb. 19, 1980.

John N. Scales (argued), Kenneth L. Murray, Scales & Shaw, Greensburg, Pa., for appellant.

Ralph D. Conrad (argued), Dominic Ciarimboli, Ciarimboli & Slyman, Greensburg, Pa., for appellee Kuhar.

Before ALDISERT, VAN DUSEN and HUNTER, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

We are faced on this appeal with a challenge to the injunctive relief granted appellee, Raymond Kuhar, by the district court. Appellant, Greensburg-Salem School District (School District), contends that the district court erred in entering judgment for Kuhar on his claim that the School District's policy of mandatory retirement at the age of 65 should not be applied to him, and in permanently enjoining the School District from terminating Kuhar's employment for reasons of age until Kuhar reached the age of 70. We reverse.

Raymond Kuhar has been employed as a teacher, counselor, and administrator by the Greensburg-Salem School District for over 33 years. He is currently the assistant principal at Greensburg-Salem Junior High School, a position he has held since 1975. On August 27, 1977, Kuhar became 65 years old. The School District notified him on April 24, 1978, that he would be retired as of June 30, 1978, in accordance with the long-standing, announced policy that required all employees to retire at the end of

the school year in which they attain the age of 65.

On May 10, 1978, Kuhar filed in the United States District Court for the Western District of Pennsylvania a motion for a temporary restraining order and a complaint seeking preliminary and permanent injunctions against his forced retirement. He based his suit on 42 U.S.C. § 1983, alleging that his rights under the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution had been violated. The court granted the temporary restraining order. On June 19, 1978, after three days of hearings, the court entered judgment for Kuhar and permanently enjoined the School District from terminating Kuhar's employment for reasons of age until Kuhar completed work for the fiscal year in which he reached 70. The court also ordered that Kuhar be afforded an administrative hearing before termination for any reason. On June 28, 1978, the School District filed a motion for a new trial, a motion to amend and supplement the findings of fact and conclusions of law and judgment, and a motion to suspend the injunction. The district court entered an amended order and judgment on February 27, 1979; the terms of the injunction were the same as those enumerated in the June 1978 order. The School District appeals from this order.

Kuhar contends on appeal, as he did at trial, that the School District's mandatory retirement policy as applied to him violated the Fourteenth Amendment to the Constitution. Although he couches his argument in terms of equal protection, his argument appears to be based on the due process clause.[1] The gravamen of Kuhar's claim is not that the School District has impermissibly created a classification based on age. Rather, he urges the view that it is irrational, in light of the known fact that the mandatory retirement age will advance to 70 on January 1, 1979, to apply the mandatory retirement age of 65 to him in 1978.[2]

The Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634, protected individuals between 40 and 65 years of age. Id. at § 631. On April 6, 1978, Congress passed the 1978 amendments to this Act, Pub.L. 95–256, raising the age limit of protected individuals to 70. January 1, 1979, was set as the effective date of these amendments; Congress clearly intended that they have no retroactive effect. H.R. Rep.No.95–527, 95th Cong., 1st Sess. 7 (1977);[3] accord, S.Rep.No.95–493, 95th

[1]. An equal protection claim arises when an individual contends that he is receiving different treatment from that received by other individuals similarly situated. In the context of distinctions based on age such as the one here, the equal protection claim would proceed from the premise that individuals above and below the age limit are similarly situated and should not be treated differently. In addressing such concerns, the Supreme Court has ruled that age distinctions, such as those embodied in mandatory retirement policies, are valid so long as they are rationally related to furthering a legitimate state interest. Vance v. Bradley, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979); Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976); Palmer v. Ticcione, 576 F.2d 459 (2d Cir. 1978). Accordingly, to succeed on an equal protection claim Kuhar must demonstrate that the policy requiring retirement at age 65 is "so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that [it is] irrational." Vance v. Bradley, supra 440 U.S. at 97, 99 S.Ct. at 943.

As noted in the text, Kuhar's argument does not focus on the age classifications themselves.

Instead, Kuhar challenges the application to him of the age 65 retirement policy which was due to become obsolete in the near future.

[2]. We reject appellee Kuhar's contention that the appeal should be dismissed as moot. The School District argues that the district court improperly enjoined the mandatory retirement of Kuhar which had been scheduled to take effect on June 30, 1978. Although, as a result of the injunction, Kuhar still is employed, this does not bring him within the protection afforded by the 1978 amendments to the Age Discrimination Act of 1967. See note 3, infra. In light of these facts, the School District certainly has a "legally cognizable interest in the final determination of the underlying questions of fact and law." County of Los Angeles v. Davis, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979).

[3]. H.R.Rep.95–527, 95th Cong., 1st Sess. 7 (1977), states:

"This bill would amend section 12 of the Age Discrimination in Employment Act to raise the upper limit from 65 to 70 for all non-Federal employees covered by the act.

Cong., 2nd Sess. 7, *reprinted in* 1978 U.S. Code Cong. & Admin.News, pp. 504, 510.

Kuhar does not claim that he is actually protected by the terms of the Age Discrimination in Employment Act Amendments of 1978. He contends, nonetheless, that the School District has acted irrationally in not applying a 70 age limit to him. This becomes clear when his argument is examined. Kuhar does not contend that there is no rational relationship between the state interests and the application of an age 70 mandatory retirement policy. Nor does he argue that in the past there was no rational relationship between the state interests and the application of an age 65 mandatory retirement policy. He urges, rather, that a rational relationship between the state interests and the age 65 mandatory retirement policy has been absent since April 6, 1978, the date of enactment of the 1978 amendments to the Age Discrimination in Employment Act of 1967.[4]

The district court found that the School District had a policy mandating retirement at age 65 (443a), that this policy applied to all employees (443a), and that this was the sole reason the School District attempted to terminate Kuhar (444a). The court concluded that Kuhar was not protected from termination by the Age Discrimination in Employment Act of 1967 or by the 1978 amendments to the Act (446a). After noting that "the School District is compelled by the 1978 Amendment . . . to change its mandatory retirement age from 65 years to 70 years, effective January 1, 1979," the court concluded that as of April 6, 1978, "the School District *could and should have* immediately changed its mandatory retirement policy as to Kuhar in conformity with the required provisions of the 1978 Amendments" (446a) (emphasis supplied). The court further concluded:

> "[S]ince Kuhar is the one and only employee who has been made subject to [the age 65] retirement policy since the April 6, 1978 passage of the Amendments to the Age Discrimination in Employment Act of 1967 [447a], . . . [i]t is clear beyond doubt that the attempted application of the Defendant School District's 'mandatory retirement at age 65 policy' to the Plaintiff under the facts of this case is totally irrational." (455a)

Having adopted the reasoning advanced by Kuhar, the district court concluded that Kuhar's constitutional rights under the Fourteenth Amendment had been violated.[5]

This holding is in error. Simply put, the analysis finds a constitutional violation has occurred because the School District did not apply the terms of a statute prior to the effective date of that statute. There is no constitutional right to work beyond the age of 65. See *Vance v. Bradley*, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979); *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). At the time this case was initiated, there was no statutory right to work beyond the age of 65. See 29 U.S.C. § 631.

"The age 70 limit would become effective at the end of 180 days after enactment. From the date of enactment through the 180-day period, the upper age limit would continue to be 65. This will give employers and labor organizations an opportunity, where necessary, to bring their policies and employee benefit plans into conformance with the law.

"*The provision raising the upper age limit is in no sense retroactive.* No new rights accrue before or during the 180-day period. *Workers aged 65 through 69 who have been mandatorily retired before or during the 180-day period after enactment could not claim discrimination under these amendments.* Such workers, if under age 70, would of course, be protected by the provisions of the Age Discrimination in Employment Act in applying for new employment after the 180-day period." (Emphasis supplied.)

4. Because Kuhar's argument does not actually challenge the classifications based on age, but rather the continued application of a presumptively valid classification in light of the enactment of a statute which will take effect in the future, the issue of the validity of the mandatory retirement age itself is not before this court.

5. The district court explicitly stated that it did not sustain any of Kuhar's claims under the federal statutes prohibiting discrimination based on age (458a). Nonetheless, it entered judgment in favor of Kuhar, after reaching the constitutional issue presented.

Nor was there present in this suit any allegation that the School District had applied its mandatory retirement policy in other than an even-handed fashion. To affirm the district court under these circumstances would, in effect, entail rewriting the federal legislation which specifically provided that the expansion in coverage of individuals was not to become effective until January 1, 1979. It would undermine the explicit congressional intent to allow a delay period between passage and enforcement of the statute. It would invite a myriad of constitutional claims based on "irrationality" by those whose statutory rights do not accrue until some future date.[6] Essentially, it would eviscerate any congressional attempt to grant employers and others lead time in order to provide smooth transitions for statutory changes. Such a result would be unwarranted and illogical. In light of our analysis of the relevant law and facts in this case, we must disagree with the district court's conclusion that the School District violated Kuhar's constitutional rights by attempting to terminate his employment in accordance with its age 65 mandatory retirement policy.[7] Accordingly, the judgment of the district court will be reversed and the June 19, 1978, and February 27, 1979, injunctions will be dissolved. The mandate shall issue forthwith.

6. Kuhar is incorrect when he argues (see, for example, appellee's brief at 10–13) that there is no rational relationship between the state interests in the age 65 mandatory retirement policy and its application to him, which argument was accepted and relied on by the district court. For example, he acknowledges that one of the legitimate state interests is reducing financial costs (appellee's brief at 10). In fact, if Kuhar retires, his replacement might well command a lower salary than Kuhar. The School District's advertisement for Kuhar's position stated that the annual salary range was from $18,000. to $24,000. (449a). Kuhar's salary was $21,000. (449a). It is certainly possible that the School District could find a qualified candidate who would be willing to accept a salary of less than $21,000. This potential financial saving bears a rational relationship to the School District's stated goal of providing "the best education at the most affordable cost" (459a).

Kuhar also admits that the state has identified the existence of a surplus of educators as a problem and has a legitimate interest in providing more opportunities for advancement in the field of education (appellee's brief at 13). Kuhar's retirement would result in a job opening. Thus, the age 65 retirement policy as applied to Kuhar is rationally related to this state interest. The fact that there may be fewer jobs opening up in the next five years, when employees between the ages of 65 and 70 cannot be required to retire based on their age, does not negate the fact that applying the age 65 mandatory retirement policy in 1978 would result in at least one job vacancy.

Similarly, the enunciated state interest in promoting new ideas (appellee's brief at 10) is rationally related to the long-standing retirement policy. Employees new to a position often bring new perspectives to it, and the School District can justifiably conclude that it will further its goal of injecting "new blood" into the system by requiring Kuhar to retire and thereby creating a vacancy. The district court's observation that Kuhar would likely be replaced by someone presently employed within the School District (451a 452a) misses the point. Different individuals often bring different perspectives to a job, even though they might have been already employed in other capacities within the same system. Further, the School District need not prove that a particular individual has a different perspective from his predecessor. The fact that different individuals generally bring different perspectives to a situation provides a rational basis for a policy which increases the likelihood of vacancies.

We also note that the same district court in a subsequent decision concluded that, on the facts of that case, there was a rational relationship between the continuation of the mandatory retirement at age 65 policy and the "furtherance and implementation of the avowed interests of the School District to provide to the school children of such District 'the best education at the most affordable cost.' " *Ely v. School District of Pittsburgh*, No. 78–1021 (W.D.Pa. Oct. 26, 1978).

7. Kuhar's contention that his constitutional right to due process was violated by the School District's failure to afford him a pre-termination hearing is without merit. As it was undisputed that Kuhar was 65 and that the School District's sole reason for terminating him was its age 65 mandatory retirement policy, there was nothing which could have been adjudicated at a School District pre-termination hearing.