John H. MacDONALD, Plaintiff,

v.

The BOARD OF COMMISSIONERS OF PILOTS OF the STATE OF NEW YORK, Defendant.

No. 81 Civ. 0889 (CBM).

United States District Court, S. D. New York.

Sept. 9, 1981.

Hill, Rivkins, Carey, Loesberg, O'Brien & Mulroy by Paul W. Wheeler, New York City, for plaintiff.

Waesche, Sheinbaum & O'Regan by Richard W. Stone, II, New York City, for defendant.

## MEMORANDUM OPINION

MOTLEY, District Judge.

Plaintiff, John H. MacDonald, is a pilot for oceangoing vessels. He has brought the instant action in an attempt to prevent the Board of Commissioners of Pilots of the State of New York (the Board) from revoking his pilot's license for the waters of Long Island and Block Island Sounds (the Sounds) because he has reached the age of 65. Plaintiff seeks a preliminary injunction suspending, *pendente lite*, the operation of the regulation requiring his retirement. For the reasons given below, plaintiff's application for a preliminary injunction is denied. The following shall constitute this court's findings of fact and conclusions of law as required by Fed.R.Civ.P. 52(a).

*The Facts*

The Board is a public agency created by the New York State Legislature to regulate pilots who navigate oceangoing vessels while such vessels are sailing on New York State waters.[1] The Board issues three types of pilot licenses, each covering a different portion of the State's navigable waters. The instant action involves revocation of a license for Long Island Sound and Block Island Sound. The Board's jurisdiction was specifically extended in 1972 to include the waters of the Sounds.[2] This extension of the Board's jurisdiction to the Sounds occurred almost two years after the Board, by administrative regulation, had already refused to license pilots on other New York waters past the age of 65.[3] Moreover, the legislative enactment giving the Board jurisdiction over the Sounds also included a "grandfather" provision which allowed all pilots on the Sounds who had already reached the age of 60 before the legislation went into effect to obtain licenses until age seventy.[4] The existence of the "grandfather" provision demonstrates that the New York State legislature must have been aware of the Board's then-existing regulation requiring mandatory retirement from piloting on New York State waters at age 65.

By letter dated February 21, 1980, plaintiff contacted the Board and requested an extension of his pilot's license past his 65th birthday. By letter dated February 26, 1980, the Board granted plaintiff a temporary extension, pending receipt by the Board of an opinion from the Attorney General of New York State concerning the legality of the regulation at issue. On October 20, 1980, the Attorney General sent an opinion letter to the Board endorsing the Board's imposition of a mandatory retirement age of 65. On October 29, 1980, the Board notified plaintiff of the Attorney General's opinion and revoked his license to pilot vessels in the Sounds. On February 18, 1981, plaintiff commenced the instant action.

*Discussion*

Before this court can grant relief *pendente lite*, plaintiff must show irreparable harm *and* either (1) likelihood of success on the merits *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of the hardships tipping decidedly toward the plaintiff. *Jackson Dairy Inc. v. H. P. Hood & Sons*, 596 F.2d 70, 72 (2d Cir. 1979). For the reasons given below, this court has con-

---

1. *See* McKinney's Consol.Laws, N.Y.Nav.Law §§ 87–98.

2. *See* McKinney's Consol.Laws, N.Y.Nav.Law § 91–b (effective January 1, 1972).

3. *See* 21 NYCRR § 52.8(c) which reads:

Effective on and after June 1, 1970, the mandatory retirement age of 65 years shall apply to all pilots licensed by the board.

4. *See* McKinney's Consol.Laws, N.Y.Nav.Law § 91–b(2).

cluded that plaintiff has failed to show likelihood of success on the merits or sufficiently serious questions going to the merits of the instant action to create a fair ground for litigation. Accordingly, the application for a preliminary injunction must be denied.

■ The initial thrust of plaintiff's argument is an attempt to attack the Board's action on equal protection grounds. However, plaintiff has failed to offer any satisfactory reason why this case is not controlled by the Supreme Court's recent decisions in *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) (*Murgia*) and *Vance v. Bradley*, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1978) (*Vance*). Plaintiff admits, as he must, that, the regulation at issue need only have a rational relationship to some legitimate state objective. The Supreme Court has repeatedly stated that only a minimal showing is necessary to meet the rational-basis test. In *Vance*, the Supreme Court's most recent pronouncement concerning the application of equal protection analysis to mandatory retirement regulations, the Court rejected an equal protection challenge to a federal statute requiring Foreign Service personnel to retire at age 60. Writing for the Court, Justice White stated that when applying a rational basis standard, the Court

> ... will not overturn ... a statute unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational.

440 U.S. at 97, 99 S.Ct. at 942.

In the instant case, the Board points to the obvious connection between age and the diminution of various physical faculties such as eyesight, endurance, and physical agility. By definition, pilots must meet the ships they are to navigate before those ships enter protected waters. Thus pilots must meet and board ships in open sea via a swinging rope ladder called a "Jacob's ladder". Moreover, at the hearing on plaintiff's application for preliminary relief held on April 10, 1981, both sides admitted that a pilot could potentially be on a ship for as long as fourteen hours to traverse the waters covered by the license here at issue. On the record before the court, there is simply no way to say that it was "irrational" for the Board to make a connection between advancing age and a pilot's ability to perform his job.

The court appreciates plaintiff's position. Plaintiff, through his own testimony and the testimony of other pilots, attempted at length to demonstrate his personal capacity to discharge his duties. This decision is in no way motivated by a finding that plaintiff, as an individual, cannot do his job. However, the question before the court is not whether plaintiff is still fit enough to be a pilot on the Sounds but, instead, whether it was rational for the Board to conclude that physical abilities were a sufficient component of a pilot's qualifications to set a mandatory retirement age. It is not enough for this court to be able to conclude that physical abilities are the *least* important qualification a pilot can bring to his job. The court would have to find that physical abilities were *completely unrelated* to a pilot's task. Such a finding is impossible on this record.

In his efforts to characterize the mandatory retirement age as irrational, plaintiff also relies heavily on the absence of an age limit on either his master's license issued by the United States Coast Guard, or the pilot licenses he holds from Connecticut and Rhode Island. While the absence of mandatory retirement limits for ocean pilot licenses issued by other jurisdictions does go to the reasonableness of the Board's actions, the failure of other jurisdictions to retire ocean pilots at a given age is not enough to characterize the Board's action as irrational. This court's obligation is not to decide whether the Board's action "is wise, [or] that it best fulfills the relevant social and economic objectives ... or that a more just and humane system could not be devised." *Massachusetts Board of Retirement v. Murgia, supra,* 427 U.S. at 317, 96 S.Ct. at 2568 *quoting Dandridge v. Williams,* 397 U.S.

471, 487, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970). By itself, the fact that other jurisdictions have not decided to retire ocean pilots cannot preclude New York from doing so if New York's decision is otherwise rationally related to a legitimate state goal.

■ Plaintiff's second major argument is an allegation that the Board's action deprives him of due process. While this argument was mentioned only briefly in plaintiff's complaint, the court requested further briefing of this issue after the April 10, 1981, hearing in an attempt to fully explore all issues conceivably raised by plaintiff's application for preliminary relief. Unfortunately, both sides have failed to deal with relevant Second Circuit authority. In particular, the parties have failed to deal with the Second Circuit's recent opinion in *Palmer v. Ticcione*, 576 F.2d 459 (2d Cir. 1978), cert. denied, 440 U.S. 945, 99 S.Ct. 1421, 59 L.Ed.2d 633 (1979) (*Palmer*). In *Palmer* the Second Circuit rejected both equal protection and due process attacks on a decision to institute a mandatory retirement age of 70 made by the school board of Copiague, New York. In discussing the due process claim, the Second Circuit refused to conclude that the mandatory retirement age constituted an impermissible irrebuttable presumption.[5] Noting that a claim of impermissible irrebuttable presumption is "analytically very similar to an equal protection [claim]," the Court of Appeals stated that a statutory classification "sustainable as rationally based . . . should not fall simply because it might also be labeled a presumption." 576 F.2d at 463.

In addition, the Court of Appeals in *Palmer* called attention to its more extensive discussion of the relationship between mandatory retirement schemes and due process in *Johnson v. Lefkowitz*, 566 F.2d 866 (2d Cir. 1977) (*Johnson*), cert. denied, *Johnson v. Abrams*, 440 U.S. 945, 99 S.Ct. 1421, 59 L.Ed.2d 633, reh. denied, 441 U.S. 956, 99 S.Ct. 2185, 60 L.Ed.2d 1060 (1979).

Citing cases from the Supreme Court and other circuits, the Second Circuit declared "that age is not a suspect classification requiring strict scrutiny of the state's scheme of age restrictions." 566 F.2d at 869. The plaintiff's substantive due process claim in *Johnson* was dismissed because the irrebuttable presumption analysis "is limited to those cases involving suspect classifications." *Id.*

Plaintiff's position in the instant case is identical to the plaintiffs in *Palmer* and *Johnson*. Plaintiff has not pointed to any authority which would cause this court to apply strict scrutiny to the regulation presently at issue. Plaintiff's reliance on the Supreme Court's decisions in *Vlandis v. Kline*, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973) (*Vlandis*) and *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (*Bell*) is misplaced. In *Vlandis* the Supreme Court invalidated a Connecticut statute establishing an irrebuttable presumption that a college student domiciled outside Connecticut during the first year of attendance at one of the State's universities remained domiciled outside the State for as long as the student attended the university. In *Bell* the Supreme Court struck down a Georgia statute which automatically suspended an uninsured motorist's driver's license if the uninsured motorist was involved in an accident and failed to post security to cover the amount of damages claimed by the other parties involved in the accident. Neither case involves age discrimination. Moreover, *Bell* clearly involves procedural, rather than substantive due process. *See Bell v. Burson, supra,* 402 U.S. 539–40, 91 S.Ct. 1589–90. The procedural due process component of this case will be dealt with below.

A close reading of *Vlandis* discloses that it may furnish some support for inquiring whether some narrower, "reasonable and practical means" may be required in lieu of an irrebuttable presumption without first

---

5. *See* 576 F.2d at 463–464, citing *McIlvaine v. Pennsylvania*, 415 U.S. 986, 94 S.Ct. 1583, 39 L.Ed.2d 884 (1974); *Weisbrod v. Lynn*, 420 U.S. 940, 95 S.Ct. 1319, 43 L.Ed.2d 420 (1975); *Rubino v. Ghezzi*, 512 F.2d 431 (2d Cir.), cert. denied, 423 U.S. 891, 96 S.Ct. 187, 46 L.Ed.2d 122 (1975).

determining whether the presumption impacts on some suspect classification. *See Vlandis v. Kline, supra,* 412 U.S. at 451–53, 93 S.Ct. at 2236–37. However, such a reading of *Vlandis* is far from certain since the decision in *Vlandis* does not contain any detailed discussion of the nature of the classification or the level of constitutional scrutiny actually being applied. In any case, later Supreme Court decisions have made clear that some sort of suspect classification is necessary before a court can demand narrowly tailored alternatives to an irrebuttable presumption pursuant to strict scrutiny. *See Johnson v. Lefkowitz, supra,* 566 F.2d at 868–69 (and cases cited therein).

The court is particularly confident of its disposition of plaintiff's substantive due process claim in light of the Supreme Court's action in *McIlvaine v. Pennsylvania,* 415 U.S. 986, 94 S.Ct. 1583, 39 L.Ed.2d 884 (1974) (*McIlvaine*). In *McIlvaine* the Supreme Court considered an appeal from the Pennsylvania Supreme Court affirming the constitutionality of a Pennsylvania statute requiring Pennsylvania state police to retire at age 60. After considering the briefs, the Supreme Court dismissed the appeal for want of a substantial federal question. The plaintiff clearly presented a due process argument to the court, as illustrated by the detailed analysis of the *McIlvaine* briefs in *Weisbrod v. Lynn,* 383 F.Supp. 933, 936–37 (D.D.C.1974) (Robinson, J.). Equally significant, the Supreme Court apparently changed its mind about the equal protection issues presented by state mandatory retirement schemes when, subsequent to *McIlvaine,* it entertained an equal protection attack on a Massachusetts statute requiring retirement of state policemen at age 60 in *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) (*Murgia*). However, *Murgia* discussed only the equal protection question presented by the Massachusetts statute,

from which it may be inferred that the due process acceptability of mandatory state retirement laws still does not present a substantial federal question. *See also Vance v. Bradley,* 440 U.S. 93, 94 n.1, 99 S.Ct. 939, 941 n.1, 59 L.Ed.2d 171 (1979).

■ The second component of plaintiff's due process argument depends upon procedural rather than substantive due process. Again, this claim has been considered, and rejected, by recent Second Circuit decisions. In *Palmer v. Ticcione, supra,* the plaintiff argued that she should be given a hearing to determine whether she, individually, was capable of performing her teaching job past the mandatory retirement age. The Second Circuit summarily rejected this contention, citing *Johnson v. Lefkowitz, supra.* See 576 F.2d at 464. As described above, *Johnson* involved an attack on a New York state statute requiring tenured civil servants to retire at age 70. Plaintiff argued that he was entitled to a hearing to determine his individual fitness. The Second Circuit rejected the argument, stating:

> Assuming *arguendo* that Johnson's dismissal affected his property or liberty, a determination of constitutionally mandated procedures requires that the interests of the individual in being afforded such safeguards be balanced against the burden to the state in conducting them. It is clear to us that the administrative cost to the state of providing each retiree with a hearing would be enormous, and by far outweigh the hardship to the individual.

566 F.2d at 869.[6]

One final point only tangentially mentioned by plaintiff needs to be addressed in connection with the present discussion of due process. The Supreme Court has for some time recognized that individuals possess a sufficient liberty interest in being able to practice a certain profession to activate due process considerations when the state interferes with an individual's ability

---

**6.** In fact, the question of whether procedural due process requires a hearing before a mandatory retirement regulation can be applied to a particular individual was probably answered in this Circuit considerably longer ago by then Chief Judge Lumbard's opinion in *Air Line Pi-* *lots Association, International v. Elwood R. Quesada, Administration of the Federal Aviation Agency,* 276 F.2d 892, 896 (2d Cir. 1960), *cert. denied,* 366 U.S. 962, 81 S.Ct. 1923, 6 L.Ed.2d 1254, *reh. denied* 368 U.S. 870, 82 S.Ct. 27, 7 L.Ed.2d 71 (1961).

to engage in his chosen profession. *Greene v. McElroy,* 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959); *Schware v. Board of Bar Examiners of the State of New Mexico,* 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957). However, the Supreme Court has also long recognized a state's ability to "require high standards of qualification" before licensing members of a profession as long as the qualifications "have a rational connection" to the demands of the particular profession involved. *See Schware v. Board of Bar Examiners of the State of New Mexico, supra,* 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (and cases cited therein). The determination of whether a state's regulation of a person's liberty to pursue a given profession is permissible is therefore "analytically very similar to an equal protection" analysis in the same way that equal protection analysis also resembles consideration of irrebuttable presumption claims under due process. *Palmer v. Ticcione,* 576 F.2d 459, 463 (2d Cir. 1978). It would thus be anomalous for this court to reject an equal protection challenge to the regulation at issue only to turn around and say the regulation constituted an impermissible interference with plaintiff's liberty interest in pursuing his profession because it was not rationally connected to the state's interest in setting standards for the profession of harbor piloting. The preceding rejection of plaintiff's equal protection and substantive due process challenges requires rejection of any suggestion that the regulation under attack is an unconstitutional interference with plaintiff's liberty interest in pursuing his profession.

On a more general level, the court notes in conclusion that the plaintiff here proceeds on a set of facts considerably less supportive of his position than the factual situation of the plaintiff in the Second Circuit's recent decision in *Palmer v. Ticcione, supra.* The administrative regulation under attack in *Palmer* was the product of the Copiague school board. The administrative regulation at issue in the instant case seems to have received the direct approval of the New York State Legislature. Even more significant, the Second Circuit admitted in *Palmer* that it was dealing with a profession "which involves predominantly mental skills," and upheld the regulation. 576 F.2d at 462. Here, there appears to be an obvious link between a certain minimal level of physical fitness and an ocean pilot's ability to perform his job, although, as mentioned previously, the linkage may be slight.

For the reasons just given, plaintiff's application for a preliminary injunction is denied in all respects.